Carl Fischer-Hansen, Appellant, *v.* The Brooklyn Heights Railroad Company, Respondent, Impleaded with Another.

1. Attorney and Client — Code Civ. Pro. § 66. Section 66 of the Code of Civil Procedure, relating to an attorney or counsel's compensation, giving a lien upon his client's claim and cause of action from the commencement of the action or special proceeding, and providing a new remedy for its enforcement, is remedial and should be liberally construed.

2. Attorney's Lien — Enforcement after Settlement by the Parties before Trial by Equitable Action. Where a claim and cause of action are extinguished by a settlement made by the parties before judgment, the statute impliedly, although not expressly, provides that the attorney's lien shall extend to the proceeds, and it attaches to the fund the instant it is created by the settlement, so that a party who with actual or constructive notice of the lien pays the fund over to the other, does so at his peril, and is liable to the attorney for the amount of his lien in an equitable action to enforce it, where he is unable to collect it from his client on account of his financial irresponsibility. This does not prevent an honest settlement in good faith of his cause of action by the latter, but it does protect the reciprocal right of his attorney to follow the proceeds, and that the legislature intended to protect.

3. Code Remedy Not Exclusive — What Must and May Be Shown in Such Action. The fact that the statute provides a remedy by petition for the enforcement of the lien does not prevent the maintenance of such an action, since that remedy is cumulative and not exclusive; but in such an action the plaintiff must show that he comes within the statute by establishing the facts alleged in his complaint, and it is open to any defense tending to show that no lien ever existed, or that if it once existed it was discharged with the consent of the plaintiff, or was waived, or forfeited by his misconduct or neglect.

*Fischer-Hansen* v. *Bklyn. Heights R. R. Co.,* 63 App. Div. 356, reversed.

(Argued January 16, 1903; decided February 17, 1903.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered August 20, 1901, affirming a judgment of Special Term sustaining a demurrer to the complaint.

It is alleged in the complaint, in substance, that on the 5th of January, 1900, the plaintiff, an attorney and counselor at law, was retained by the defendant Louis Olsen to commence and prosecute an action against the Brooklyn Heights Railroad Company to recover $50,000 damages for personal injuries received by said Olsen through the negligence of said company whereby he lost his right leg. A written agreement was entered into between Olsen and the plaintiff, whereby the former agreed that the latter, in consideration of his professional services to be rendered and the disbursements to be made in the said action, should have fifty per cent of the verdict recovered therein. The action was commenced and prompt notice in writing was given to the defendant that the plaintiff claimed a lien upon the papers and subject-matter of the action for his services therein, and requesting it to make no settlement with said Olsen or with any person other than himself. After the defendant had served its answer and the case, duly noticed for trial by both parties, had been placed upon the calendar for trial, the defendant, without notice to the plaintiff herein, settled with the plaintiff therein and agreed to pay him the sum of $1,500. Upon receiving from him a written release of all claims by reason of said cause of action, it paid him that amount, but no provision was made for the satisfaction of the plaintiff's lien. The settlement was made in secret, and on the next day, Olsen, who was financially irresponsible, returned to Norway, his native country, where he has since remained. The plaintiff alleged that by virtue of these facts he was justly entitled to the sum of $750, one-half of the amount paid in settlement as aforesaid, but that no part thereof had been paid by either of the defendants, although payment had been duly demanded. His demand for judgment was that his lien in said action as attorney for said Olsen " be ascertained and foreclosed against said defend-

ants and each of them ; that this court settle and determine
the equities of the parties hereto in relation to plaintiff's said
lien in the action hereinbefore referred to ; " that by reason
of the premises the defendants, or either of them, be adjudged
to pay him the amount claimed " based upon " said settlement,
and for such other relief " in the premises as shall be just and
equitable."

The defendant railroad company demurred to the complaint
upon the ground that it did not state facts sufficient to consti-
tute a cause of action.   The demurrer was sustained both by
the Special Term and the Appellate Division, and after the
entry of final judgment the plaintiff appealed therefrom to
this court.

*John R. Dos Passos, Donald F. Ayres* and *Carl Fischer-
Hansen* for appellant.   Upon the facts and law, plaintiff is
entitled to recover.   (*N. E. Co.* v. *Crane*, 167 N. Y. 508 ;
*Peri* v. *N. Y. C. R. R. Co.*, 152 N. Y. 521 ; *Pilkington* v.
*B. H. R. R. Co.*, 49 App. Div. 32 ; *Rochfort* v. *M. S. Ry.
Co.*, 50 App. Div. 261.)   The case at bar is clearly within the
language of the act of 1879.   (*Fenwick* v. *Mitchell*, 70 N. Y.
670 ; 1 Kent's Comm. 462 ; *Antony* v. *Cardenham*, 2 Bott.
194 ; *Reg.* v. *Wyncondham*, L. R. [2 Q. B.] 541 ; *Reg.* v. *Col-
lingwood*, L. R. [12 Q. B.] 681 ; *Reg.* v. *Dowling*, 8 El. &
Bl. 605 ; *Riggs* v. *Palmer*, 115 N. Y. 506 ; *Smith* v. *People*,
47 N. Y. 330 ; *People ex rel.* v. *Lacombe*, 99 N. Y. 49 ; *People*
v. *Crennan*, 141 N. Y. 239 ; *People ex rel. T. T. S. R. R.
Co.* v. *Comrs. of Taxes*, 95 N. Y. 558 ; *O. S. Co.* v. *Dollo-
way*, 21 N. Y. 461.)   A bill in equity is the proper and
regular method of enforcing an attorney's lien.   (19 Am. &
Eng. Ency. of Law [2d ed.], 35, 36 ; Pom. Eq. Juris. 1952 ;
*Winslow* v. *Urquhart*, 39 Wis. 260 ; *Ogg* v. *Tate*, 52 Ind.
159 ; *Ball* v. *Vason*, 56 Ga. 264 ; *Watson* v. *C. B. Co.*, 13
S. C. 433 ; *Gaskell* v. *Davis*, 63 Ga. 645 ; *Lawton* v. *Case*,
73 Ind. 60 ; *Cummings* v. *Halsted*, 26 Minn. 151 ; *Miller* v.
*Bergenthal*, 50 Wis. 474 ; *Spink* v. *McCall*, 52 Iowa, 432 ;
*Phillips* v. *Gilbert*, 101 U. S. 721.)

1903.]   Fischer-Hansen v. Bklyn. Heights R. R. Co.   495

N. Y. Rep.]      Opinion of the Court, per Vann, J.

*Henry Melville* and *John L. Wells* for respondent.   In order to sustain the complaint, this court must first reverse the uniform decisions of the courts of this state for more than thirty years, which authorize an attorney under these circumstances to prosecute the original action in order to establish his lien, and must then decide that by the settlement with Olsen this respondent conclusively admitted its liability to Olsen in the original action, and conclusively fixed the amount of such liability. (*Pickard* v. *Yenser*, 21 Hun, 403 ; *Murphy* v. *Davis*, 19 App. Div. 615 ; *O'Brien* v. *M. S. Ry. Co.*, 27 App. Div. 1 ; *Quinlan* v. *Birge*, 43 Hun, 483 ; *Coughlin* v. *N. Y. C. & H. R. R. R. Co.*, 71 N. Y. 443 ; *Peri* v. *N. Y. C. & H. R. R. R. Co.*, 152 N. Y. 521 ; *Casucci* v. *A. & K. R. R. Co.*, 65 Hun, 452 ; *Hart* v. *City of New York*, 69 Hun, 237 ; *Randall* v. *Van Wagenen*, 115 N. Y. 527.)

Vann, J.   The law has made great progress in protecting members of the bar since Blackstone wrote that "a counsel can maintain no action for his fees, which are given not as *locatio vel conductio*, but as *quiddam honorarium ;* not as a salary or hire, but as a mere gratuity, which a counselor cannot demand without doing wrong to his reputation." (Chase's Blackstone [3rd ed.], 630.)   It seems strange to the lawyer of this generation to read the report of a case decided as recently as 1841, in which those eminent lawyers, Samuel Stevens and Peter Cagger, as copartners, had sued their client to recover the sum of $300 for arguing two cases in the Court of Errors. (*Stevens* v. *Adams*, 23 Wend. 57 ; affirmed, *sub nom. Adams* v. *Stevens*, 26 Wend. 451.)   It was gravely argued for the defendant " that at common law a counselor cannot maintain an action for his fees ; " that "such is undeniably the law of England, and in this state it has not been held otherwise, the question never having been directly brought up for adjudication."   It was held, however, without a dissenting vote either in the Supreme Court or the Court of Errors, that the action would lie, although there was no reported precedent in this state to justify it. Chancellor Walworth, writing for the Court

496    Fischer-Hansen *v.* Bklyn. Heights R. R. Co.    [Feb.,

Opinion of the Court, per Vann, J.         [Vol. 173.

of Errors, declared that he had no doubt "that by the law of this state, as it has always existed from the time of its first settlement, the lawyer, as well as the physician, was entitled to recover a compensation for his services; and that such services were never considered here as gratuitous and honorary merely." Judge Cowen for the Supreme Court said that, as he understood, "there has been a case, perhaps several cases, in this court wherein counsel have been allowed to recover of their clients argument fees in a *quantum meruit.*"

Thus within the memory of lawyers now living the right of counsel to recover compensation from their clients, outside of the fee bill, was challenged at the bar and elaborately discussed by the bench, three opinions having been written in the court of last resort to show that the right existed. There has been a marked advance since then, mainly through the legislature, which has been generous to members of the legal profession, not only in costs and allowances, but also in providing a lien upon the subject of the action to secure their compensation.

When the Code of Procedure was enacted in 1848 the fee bill was abolished, all restrictions upon "the right of a party to agree with an attorney, solicitor or counsel, for his compensation" were repealed and the measure of such compensation was thereafter "left to the agreement, express or implied, of the parties." (L. 1848, ch. 379, § 258.)

In 1876, when the first part of the Code of Civil Procedure was passed, the only regulation upon the subject was the following: "The compensation of an attorney or counsellor for his services, is governed by agreement, express or implied, which is not restrained by law." (L. 1876, ch. 448, § 66.)

While this statute was in force a case arose wherein the plaintiff sued a railroad company for damages owing to personal injuries caused by its negligence. He made a written agreement with his attorney to give him one-half of the recovery for prosecuting the action and paying the expenses. After the commencement of the action the defendant, with notice of the facts, settled with the plaintiff by paying him

1903.] Fischer-Hansen v. Bklyn. Heights R. R. Co. 497

N. Y. Rep.]        Opinion of the Court, per Vann, J.

$1,000, and it was held by this court that, as the cause of action was not in its nature assignable, the party could not by any agreement before verdict or judgment give his attorney an interest therein and that the settlement was a bar to the action, notwithstanding the agreement that the attorney was to receive a share of the recovery. (*Coughlin* v. *N. Y. C. & H. R. R. R. Co.*, 71 N. Y. 443.)

After this decision and doubtless owing to it, said section was amended by adding at the end thereof the following: "From the commencement of an action or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision, or judgment in his client's favor, and the proceeds thereof in whosoever hands they may come; and cannot be affected by any settlement between the parties before or after judgment." (L. 1879, ch. 542, p. 617, § 66.)

In 1899 the section was further amended by making it apply to a special proceeding, extending the lien to a claim as well as a cause of action and a counterclaim and providing a remedy to determine and enforce the lien upon the petition of either attorney or client, so that the section in its present form, and as it stood when this controversy arose, is as follows: "The compensation of an attorney or counsellor for his services is governed by agreement, express or implied, which is not restrained by law. From the commencement of an action or special proceeding, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, decision, judgment or final order in his client's favor, and the proceeds thereof in whosoever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment or final order. The court upon the petition of the client or attorney may determine and enforce the lien." (L. 1899, ch. 61, p. 80, § 1; Code Civ. Pro. § 66.)

Thus we have a statute gradually progressing in one direction, which has required more than half a century for its development. It consists of only three sentences, but each has been the subject of one or more independent enactments intended to protect attorneys and enable them to collect pay for their services. The first establishes freedom of contract between attorney and client with reference to the compensation of the former. The second and most important gives the attorney a lien upon his client's claim and cause of action, and when the cause of action is merged in a verdict, report, decision or judgment, the lien attaches to that also as well as to the proceeds thereof, so that it cannot be affected by a settlement made between the parties at any stage of the action. The third provides a new remedy.

This act was construed by us in a recent case where the cause of action had become merged in a judgment, and we held that the statute created " a lien in favor of the attorney on his client's cause of action, in whatever form it may assume in the course of the litigation, and enables him to follow the proceeds into the hands of third parties without regard to any settlement before or after judgment;" that all the world must take notice of the lien, and that it was unnecessary for the attorney to give notice of his claim to the other party. (*Peri* v. *N. Y. C. & H. R. R. R. Co.*, 152 N. Y. 521.)

In discussing the subject we said: "It is urged by the defendant's counsel that this construction of the section is against public policy, as the law favors settlements; that the plaintiff's attorney might refuse to disclose his lien, and thereby stand in the way of settlement and compel parties to litigate who desired to compromise their differences. This criticism overlooks the fact that the existence of the lien does not permit the plaintiff's attorney to stand in the way of a settlement. The client is still competent to decide whether he will continue the litigation or agree with his adversary in the way."

There is much learning in the books relating to the lien of an attorney upon a judgment for his costs as it existed before

the statute, and though now virtually obsolete, it shows the fixed determination of the courts to protect attorneys against fraudulent settlements. The lien upon a judgment was not created by statute, but was "a device invented by the courts for the protection of attorneys against the knavery of their clients by disabling their clients from receiving the fruits of recoveries without paying for the valuable services by which the recoveries were obtained." (*Goodrich* v. *McDonald*, 112 N. Y. 157, 163.)

We now have under consideration a case where a settlement was made before judgment or even a trial, and the defendant claims that the lien of the plaintiff did not attach to the sum which it agreed to pay for a release of the cause of action. Its counsel concedes that the plaintiff might have interposed and prosecuted the action to judgment in his own behalf, notwithstanding the settlement. This form of relief is clumsy and illogical, because it authorizes the trial of a dead lawsuit in the interest of one who never owned the claim upon which it was founded. It was a device of the courts, not of the legislature, and sprang from the necessity of providing some remedy against fraudulent settlements. While it may still be resorted to in such cases, it would be of no value to the plaintiff, because his client immediately after the settlement went beyond the jurisdiction of the courts of this country and has remained absent ever since. Moreover, by bringing this action the plaintiff ratified the settlement and can have no relief except under the statute, which it is now our duty to construe.

The statute is remedial in character, and hence should be construed liberally in aid of the object sought by the legislature, which was to furnish security to attorneys by giving them a lien upon the subject of the action. The common law gave them no lien until the entry of judgment, but the statute gives them one from the commencement of the action. If the claim is prosecuted to judgment, or to a decision upon which judgment may be entered, the lien reaches forward and attaches to that also. When the claim is thus extinguished by

merger in a higher security, the statute makes express provision for the transfer and continuance of the lien. When, however, the claim is extinguished by a settlement, the statute does not expressly provide that the lien shall extend to the proceeds, and the precise question before us is whether, in view of the history and object of the act, this is impliedly commanded. Upon common-law principles the lien on the cause of action follows the proceeds into the hands of the client after payment to him, but as in this case he is irresponsible, it is necessary to determine whether the lien settled upon the fund before the defendant paid it over. Where was the lien during the interval, whether long or short, between the time of coming to terms and the time of payment? The statute says that the lien cannot be affected by any settlement between the parties before or after judgment, but does it mean that no settlement whatever can be made without the consent of the attorney? It clearly means this, unless the lien is impliedly transferred to the proceeds of the settlement. But did the legislature, in its effort to protect attorneys, intend to sacrifice the client by preventing him from making an honest settlement of his own cause of action? Did it intend to overturn the ancient and honored rule of law that settlements are to be encouraged, by giving the attorney power to insist that the litigation must continue until he consents that it should stop? Did it intend to so tie the hands of the client that he could not settle his own controversy without the permission of his attorney? A cause of action is not the property of the attorney, but of the client. The attorney owns no part of it, for a lien does not give a right to property, but a charge upon it. As it is merely incidental and for the purpose of security only, it would not be reasonable to hold that the legislature intended it should be the means of blocking an honest and genuine adjustment of controversies. We think the lien is subject to the right of the client to settle in good faith, without regard to the wish of the attorney, and we so held in the *Peri* case, where we declared that " the existence of the lien does not permit the plaintiff's attorney to stand in the

way of a settlement." The right of the parties to thus settle is absolute and the settlement determines the cause of action and liquidates the claim. This necessarily involves the reciprocal right of the attorney to follow the proceeds of the settlement, and if they have been paid over to the client, to insist that his share be ascertained and paid to him, for the defendant is estopped from saying that with notice of the lien he parted with the entire fund.

Of course, we do not refer to dishonest settlements made to cheat attorneys, which the courts will brush aside with a strong hand, but to honest settlements, made in good faith because the client preferred something certain in hand to the uncertainty of protracted litigation. Such settlements are not prohibited by the existence of the attorney's lien. The legislature did not intend to make the lien the chief thing, nor to compel the client to abdicate his position as principal in favor of the agent or attorney whom he employed in order to secure his rights. It did not intend to prevent him from dealing with his own property as he saw fit, provided he exercised his honest judgment and took no advantage of his attorney. In this case the plaintiff, by standing on the settlement, admits that it was made in good faith and thus confirms his lien upon the proceeds, which was not defeated by payment to his client, for the defendant paid at its peril. It had both actual and constructive notice of the lien, and while it does not appear that it knew the share of the fund that the plaintiff was entitled to receive, its duty was to ascertain the amount and retain it for him.

Moreover, the general rule is that a lien upon property attaches to whatever the property is converted into and is not destroyed by changing the nature of the subject. Thus a lien upon timber ordinarily extends to the shingles made out of it; a lien upon domestic animals to their young subsequently born, and a lien upon a mortgage to the land into which the mortgage is converted by foreclosure. It follows its subject and cannot be shaken off by a change of form or substance. It clings to any property or money into which the

subject can be traced, until it reaches the hands of a *bona fide* purchaser. So a lien upon a claim or a cause of action follows the fund created by a settlement of the claim, which thereupon ceases to exist. It attaches to the amount agreed upon in settlement the instant that the agreement is made, and if the defendant pays over to the client without providing for the lien of the attorney, he violates the rights of the latter and must stand the consequences. We think that the plaintiff had a lien upon the sum which the defendant agreed to pay to extinguish the cause of action, and that the law will not permit it to say that it has nothing in its hands to satisfy it. The lien was not affected by the adjustment, but leaped from the extinguished cause of action to the amount agreed upon in settlement.

The remedy provided by the Code by means of a petition is not exclusive, but cumulative, for a court of equity has always had power to ascertain and enforce liens. We have endeavored to establish that the plaintiff's lien was transferred from the cause of action to the fund into which the claim was converted by the action of the parties, and hence within familar principles a court of equity has power to enforce that lien in an action brought for that purpose. Actions to establish and enforce liens are among those most familiar to equity jurisprudence. Even if the relief ultimately granted is in the form of a money judgment, still that will be possible only through the exercise of equitable jurisdiction in ascertaining the lien and determining its amount. A money judgment may then follow, as a foreclosure is unnecessary when the subject of the lien has already been converted into money. (*Baily* v. *Hornthal*, 154 N. Y. 648, 661; *Mooney* v. *Byrne*, 163 N. Y. 87, 96.) While the statute gives the lien, the plaintiff must show that he comes within the statute by establishing the facts alleged in his complaint, and the action is open to any defense tending to show that no lien ever existed, or that if it once existed it was discharged with the consent of the plaintiff, or was waived or forfeited by his misconduct or neglect.

The judgment should be reversed, the demurrer overruled and judgment rendered for the plaintiff, with costs in all courts.

PARKER, Ch. J., GRAY, BARTLETT, HAIGHT, MARTIN and WERNER, JJ., concur.

Judgment reversed, etc.