In re BAXTER & CO.

(Circuit Court of Appeals, Second Circuit. February 28, 1907.)

Nos. 105, 208, 159, 182.

1. BANKRUPTCY—ATTORNEY'S LIENS—ORDER.

Where an order was made in bankruptcy proceedings pending a motion to dismiss the proceedings before adjudication directing the bankrupt to deposit $50,000 to stand as security for the payment of all disputed claims, the cost of the proceedings and all attorney's liens or equitable assignments, etc., such order protected any lien which the attorney for the petitioning creditors might have for his services.

2. ATTORNEY AND CLIENT—LIEN ON CAUSE OF ACTION.

In the absence of a statutory provision, an attorney has no lien on his client's naked cause of action; his right being limited to the fruits of the litigation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 5, Attorney and Client, §§ 399–406.]

3. SAME—SETTLEMENT BETWEEN PARTIES.

A client may settle a controversy with the opposite party against the consent of his attorney either before or after action brought, unless the settlement is made for the purpose of depriving the attorney of his claim.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 5, Attorney and Client, §§ 407–417.]

4. COURTS—FEDERAL COURTS—STATE STATUTES—ATTORNEY'S LIENS—ENFORCEMENT.

Code Civ. Proc. N. Y. § 66, creating an attorney's lien on the client's cause of action, etc., and providing for the enforcement thereof on petition, was not a mere practice act, but created a right and provided a remedy for its enforcement, and was therefore controlling on the federal courts sitting in such state.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 939–949.

State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

5. BANKRUPTCY—DEPOSITS—PETITIONING CREDITORS—ATTORNEY'S LIENS—EXTENT.

Pending bankruptcy proceedings against a corporation all its claims, except those amounting to about $50,000, were settled, and an application made to dismiss the proceedings, which was denied, with leave to renew, and an order made directing the corporation to deposit $50,000 to stand as security for disputed claims, cost of bankruptcy proceedings, at-

torney's liens, or equitable assignments, etc. *Held*, that the attorney for the petitioning creditors was entitled to a lien which extended to all the demands of creditors who were settled with after the attorney's formal appearance in the proceeding in their behalf, under N. Y. Code Civ. Proc. § 66, creating an attorney's lien on his client's cause of action, claim, or counterclaim, and the proceeds thereof, in whosesoever hand they may come, not affected by any settlement between the parties before or after judgment or final order.

Appeal from the District Court of the United States for the Southern District of New York.

Benjamin F. Tracy and John M. Harrington, for appellants.
John J. Adams, for respondent.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

WALLACE, Circuit Judge. The question in this case is whether Mr. Abney, the petitioner for review, has an attorney's lien upon a fund in the custody of a court of bankruptcy. By the order under review the court below disallowed the lien.

In February, 1904, petitions in involuntary bankruptcy were filed in the United States District Court for the Southern District of New York against the corporation styled "A. B. Baxter & Co.," in behalf of certain creditors, by Mr. Abney as attorney, and February 6th the court appointed a temporary receiver of the property of the corporation. The assets of the corporation were about $229,000, and its debts amounted to about $850,000. Pending a hearing upon the petitions, one Smathers and others, who were interested in effecting a financial rehabilitation of the corporation, made a settlement in behalf of the corporation with all of its creditors whose demands were undisputed, purchasing these demands and obtaining assignments thereof. These settlements were made upon the understanding that the liabilities of the corporation were to be paid in full; and the hearing upon the petition was adjourned from time to time to enable this to be done. The creditors were numerous, were scattered throughout many states, and the demands of some of them were disputed, wholly or in part, by the corporation. By June, 1904, over $800,000 had been paid in settlement of recognized claims; but the efforts to adjust the disputed claims, amounting to about $50,000, had been ineffectual. Thereafter, and in that month, the corporation applied to the court to dismiss the bankruptcy proceeding, and Mr. Abney appeared in opposition. The court denied the application provisionally, with leave to renew, and made an order directing the corporation to deposit $50,000, which was to stand as security for the payment of all the disputed claims, the costs of the bankruptcy proceeding, and "of such attorney's liens or equitable assignments as exist in the premises, if any."

The lien for attorney's services which is claimed by Mr. Abney is based upon his services for a number of those creditors for whom he had formally appeared in the bankruptcy proceeding, whose claims were settled, and who had employed him to collect these claims. Before these claims had been settled he notified the attorneys for the corporation that, if any of these creditors whom he represented were

not settled with through him, his compensation must be provided for, and served them with a written notice that he had an attorney's lien upon the several demands for his services. They assured him that he would be protected. The negotiations for settlement were continued in behalf of the corporation directly with the creditors, and the payments were made directly to them. It does not appear that these creditors were personally irresponsible, or that the settlements with them were made for the purpose of defeating the claim of Mr. Abney, and the fair inference from the evidence is that the corporation and those acting in its behalf preferred to deal directly with the creditors in order to expedite the adjustment of its affairs.

The general rule that an attorney has a right in the nature of a lien to be compensated for his services out of a fund which is brought into a court of equity by his aid is well settled. His lien extends, however, only to that part of the fund which belongs to those parties whose interests he has represented in the suit. The fund in this case consists of a deposit brought into court to satisfy certain specified claims and liens. No part of it is a fund belonging to the creditors who had been settled with, as it was not brought into court for their benefit. In opposing the application to dismiss the bankruptcy proceeding, except as he may have represented the petitioning creditors and creditors holding disputed claims, Mr. Abney appeared only for himself and to protect his own interests, and the court very properly made an order protecting his rights, if he had any. It is manifest that the rule giving an attorney a lien upon the fund in court has no application to the case. If he has an attorney's lien based upon his services for the creditors who had been settled with, it is protected by the order.

We should entertain no doubt that no lien existed, if it were not for the effect to be given to the statute of New York respecting attorney's liens. An attorney has a lien upon the papers of his client in his possession, and a lien upon the fund or judgment which he has recovered for those whose interests he has represented in the suit. But, in the absence of some statutory provision, he has no lien upon the naked cause of action of his client. Indeed, the whole law of an attorney's lien rests upon the principle that he has secured the fruits of a litigation of which he ought not to be deprived by the unfair conduct of his client. But the courts have always recognized the right of the client to settle the controversy with the opposite party against the consent of his attorney, and, where this has been done after an action has been commenced, have repeatedly declared as in Emma Silver Mining Co. v. Emma Silver Mining Co. (C. C.) 12 Fed. 815, that the attorney's lien cannot stand in the way, unless the settlement was made for the purpose of depriving the attorney of his costs. The proposition has never been more plainly and concisely stated than by Judge Brewer, now Mr. Justice Brewer, in Swanson v. Chicago Ry. Co. (C. C.) 35 Fed. 638, where he said:

"It is unquestioned that parties to a lawsuit may settle and compromise their litigation without consulting their counsel; and that, in the absence of a statute giving the attorney a lien for his fees, courts will not intervene unless

there has been collusion between the parties, and an attempt to defraud the attorney out of his fees."

Upon the argument of the case, we were disposed to regard the New York statute as one merely regulating practice in the courts of the state, but a more careful reading of the statute satisfies us that it was intended to have a wider application, and should be treated as one establishing a substantive right. As merely a practice act, it would not affect the present proceeding, which is essentially an application to the equity powers of the court, as the courts of the United States, when exercising equity jurisdiction, are not controlled by the procedure established by the statutes of the states. But there are many instances when an enlargement of equitable rights or remedies by a state statute may be administered by the federal courts sitting within the state. "State Legislatures have certainly no authority to prescribe the modes or forms of proceeding in the courts of the United States; but having created a right, and at the same time prescribed the remedy to enforce it, if the remedy prescribed is substantially consistent with the ordinary mode of proceeding on the chancery side of the federal courts, no reason exists why it should not be pursued in the same form as in the state courts." Clark v. Smith, 13 Pet. 193, 10 L. Ed. 123.

There is no doubt that a distinction exists between such laws as regulate the rights of the parties, and such as apply only to the remedy. But, as was said in Brine v. Insurance Co., 96 U. S. 627, 639, 24 L. Ed. 858, although the rules of practice in the federal courts in suits in equity cannot be controlled by the laws of the states, "this principle has not been carried so far as to deny to any party in those courts substantial rights conferred by the statute of the state."

All rules concerning the transfer of property are "primarily at least, a matter of state regulation, and not one of purely general commercial law" (Etheridge v. Sperry, 139 U. S. 276, 11 Sup. Ct. 565, 35 L. Ed. 171), and state laws, creating interests in or liens upon property within the state, control the federal courts whenever the question arises as to the validity, extent, and all the conditions of such an interest or lien. Thus the effect and validity of chattel mortgages and general assignments are determined by the law of the state in which they are made. Etheridge v. Sperry, supra; Chicago Union Bank v. Kansas City Bank, 136 U. S. 223, 10 Sup. Ct. 1013, 34 L. Ed. 341. The federal courts have treated the question of an attorney's lien as depending upon the effect of local laws. In re Paschal, 10 Wall. 483, 495, 19 L. Ed. 992, where one of the questions was whether there was such a lien, the court said:

"As the original retainer was made in Texas, we are inclined to the opinion that the rights of the parties are to be regulated by the laws of that state."

In Central Railroad v. Pettus, 113 U. S. 116, 127, 5 Sup. Ct. 387, 28 L. Ed. 915, in passing upon the question of an attorney's lien, the court referred to the law of Alabama as the law by which the question must be determined.

The state statute (Code Civ. Proc.) is as follows:

"66. The compensation of an attorney or counsellor for his services is governed by agreement, express or implied, which is not restrained by law. From

the commencement of the action or special proceeding, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to the verdict, report, decision, judgment or final order in his client's favor, and the proceeds thereof in whosesoever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment or final order. The court upon the petition of the client or attorney may determine and enforce the lien."

In Peri v. N. Y. C. R. Co., 152 N. Y. 521, 46 N. E. 849, the highest court of the state decided that this statute creates a lien upon the client's cause of action which attaches to the proceeds thereof in whosesoever hands they may come, and which cannot be affected by any settlement between the parties to the action. In Fischer-Hansen v. Brooklyn Heights R. Co., 173 N. Y. 492, 66 N. E. 395, the same court held that the lien created by the statute could be enforced by the attorney by a suit in equity against a party who upon a settlement of the cause of action with the opposite party had paid over the amount agreed upon and obtained a release of the cause of action. The court, among other things, said:

"Even if the relief ultimately granted is in the form of a money judgment, still that will be impossible only through the exercise of equitable jurisdiction in ascertaining the lien and determining its amount."

In both of these cases the court held that it was not necessary for the attorney to give any notice of his lien, but that the statute was notice of itself. The construction thus placed upon the statute is, of course, controlling in this court.

Does the statute preclude a settlement which is not intended to defeat the attorney's lien? In both of the cases referred to the client was insolvent, and the settlement was made without the knowledge of the attorney, and these facts were referred to in the opinions in each case. In the Peri Case the court said:

"The lien operates as security, and if the settlement entered into by the parties is in disregard of it and to the prejudice of plaintiff's attorney, by reason of the insolvency of his client, or for other sufficient cause, the court will interfere to protect its officer by * * * following the proceeds in the hands of third parties, who received them before or after judgment impressed with the lien."

In the Fischer-Hansen Case the court said:

"The Legislature did not intend to make the lien the chief thing, nor to compel the client to abdicate his position as principal in favor of the agent or attorney whom he employed in order to secure his rights. It did not intend to prevent him from dealing with his own property as he saw fit, provided he exercised his honest judgment and took no advantage of his attorney."

In Lee v. Vacuum Oil Co., 126 N. Y. 579, 27 N. E. 1018, although the statute was not expressly referred to in the opinion of the court, its effect was necessarily considered. The court said:

"We are of the opinion that the existence of such a lien in favor of the attorneys does not confer a right on them to stand in the way of a settlement of the action which is desired by the parties, and which does not prejudice any right of the attorneys."

In Poole v. Belcha, 131 N. Y. 200, 30 N. E. 53, the statute was considered by the court, and the decision was that, to warrant the

court in disregarding a settlement and release made between the parties to the action, "it must be shown that to give full effect to them will operate as a fraud upon the attorney or at least to his prejudice by depriving him of his costs or turning him over to an irresponsible client."

The result of these decisions is that the statute does not preclude a settlement between the parties made in good faith and not intended to deprive the attorney of his compensation; and, if the client prefers to abandon the action, or release his cause of action for a nominal consideration, he is at liberty to do so, and the lien becomes practically of no value to the attorney; but whatever is received as a consideration becomes a fund impressed with the lien in the hands of the opposite party.

Adopting this construction of the statute, we conclude that the lien should not have been disallowed by the court below, and that it attached to all the demands of those creditors who were settled with after the formal appearance of Mr. Abney in the proceeding as their attorney. The statute contemplates that the formal appearance shall be equivalent to a notice of lien, but it does not necessarily mean that an attorney who has not formally appeared, but his signified to the opposite party that he has been retained, by giving notice of his lien, shall not be protected.

The order is reversed, with costs, and with instructions to the court below to take such proceedings as may conform to this opinion.