COLEMAN, APPELLANT, *v.* SISSON, RESPONDENT.

(No. 5,535.)

(Submitted September 19, 1924. Decided October 30, 1924.)

[230 Pac. 582.]

*Attorney and Client — Divorce — Attorneys' Fees — Contract Made After Commencement of Action—Complaint—Insufficiency—Contract for Contingent Fee—Void as Against Public Policy.*

Attorney and Client—Divorce—Contract for Fees Made After Commencement of Action—Complaint—Insufficiency.
  1.  While under sections 8993 and 9786, Revised Codes of 1921, an attorney may contract with his client freely as to his compensation before the fiduciary relation commences, as respects such a contract made after the relation began he has the burden of showing that the contract was fair and reasonable and entered into freely by the client, and that the latter fully knew and understood its provisions; in the absence of such allegations the complaint is insufficient.

Same—Divorce—Attorney's Fees Contingent upon Amount of Alimony Awarded—Contract Void as Against Public Policy.
  2.  A contract between an attorney and plaintiff in a suit for divorce, providing for an attorney's fee contingent upon the amount of alimony recovered, is void as against public policy.

---

2.  Validity and effect of agreement by which attorney's right to compensation or the amount thereof is contingent upon divorce or amount of alimony, see notes in 30 A. L. R. 188; 33 L. R. A. (n. s.) 1074.

*Appeal from District Court, Judith Basin County; Rudolf Von Tobel, Judge.*

Action by Anna Coleman against Annie Sisson. Judgment for defendant and plaintiff appeals. Affirmed.

*Mr. Ralph J. Anderson,* for Appellant, submitted a brief and argued the cause orally.

The rule contended for by counsel for respondent that it was necessary for the plaintiff to plead and prove that the contract entered into was fairly entered into by reason of the fact that the relation of attorney and client had already existed at the time of the execution of the contract, even in the states where the right of freedom of contract between attorney and client after the relation has been created does not exist, has no application to a case of this kind where the action is brought for the purpose of recovering for the services rendered, but does apply in that class of cases where an attorney has acquired from his client the conveyance of property, or the transfer of securities, and it is sought to obtain relief therefrom. (See *Isham* v. *Parker,* 3 Wash. 755, 29 Pac. 842.)

There was no pleading nor proof on the part of the defendant in this case that the contract sued on was the result of misrepresentations, fraud or deceit. We submit that under our statute relative to the compensation of attorneys it is not incumbent upon the attorney when merely suing to recover judgment for his services to plead and prove that the contract was fairly entered into and that it was free from fraud.

*Messrs. Belden & DeKalb* and *Mr. Merle C. Groene,* for Respondent, submitted a brief; *Mr. H. Leonard DeKalb* argued the cause orally.

An attorney who enters into a contract for additional fees for the same service originally contracted for, after the relation of attorney and client has been established, is required to

plead and prove (a) the justness of the additional fee, (b) that it was agreed upon after a full and frank disclosure to the client of all reasons for its exaction, and (c) that it was obtained without fraud or misrepresentation and without express or implied duress. (*Matter of Howell,* 215 N. Y. 466, Ann. Cas. 1917A, 527, 109 N. E. 572; *Ransom* v. *Ransom,* 70 Misc. Rep. 38, 107 N. Y. Supp. 1027; see, also, *Blaikie* v. *Post,* 137 App. Div. 648, 122 N. Y. Supp. 292; *Miller* v. *Lloyd,* 181 Ill. App. 230; *Donaldson* v. *Eaton & Estes,* 136 Iowa, 650, 125 Am. St. Rep. 275, 14 L. R. A. (n. s.) 1168, 114 N. W. 19; *Chreste* v. *Louisville Ry. Co.,* 167 Ky. 75, L. R. A. 1917B, 1123, 180 S. W. 49; *Etzel* v. *Duncan,* 112 Md. 346, 76 Atl. 493; *Bar Assn. of Boston* v. *Hale,* 197 Mass. 423, 83 N. E. 885; *In re Nethaway,* 108 Minn. 41, 121 N. W. 418; *Olson* v. *Farnsworth,* 97 Neb. 407, 150 N. W. 260; *Egan* v. *Burnight,* 34 S. D. 473, Ann. Cas. 1917A, 539, 149 N. W. 176; *Keenan* v. *Scott,* 64 W. Va. 137, 61 S. E. 806; *Vance* v. *Ellison,* 76 W. Va. 592, 85 S. E. 776.)

A contract for the payment of a fee to an attorney, contingent upon his procuring a divorce for his client, or contingent in amount upon the amount of alimony to be obtained, is void as against public policy. (*Newman* v. *Freitag,* 129 Cal. 283, 50 L. R. A. 548, 61 Pac. 907; *Brindley* v. *Brindley,* 121 Ala. 429, 25 South. 751; *McConnell* v. *McConnell* (1911), 98 Ark. 193, 33 L. R. A. (n. s.) 1074, 136 S. W. 931; *Donaldson* v. *Eaton & Estes,* 136 Iowa, 650, 125 Am. St. Rep. 275, 14 L. R. A. (n. s.) 1168, 114 N. W. 19; *McCurdy* v. *Dillon,* 135 Mich. 678, 98 N. W. 746; *Klampe* v. *Klampe,* 137 Minn. 227, 163 N. W. 295; *Lynde* v. *Lynde,* 64 N. J. Eq. 736, 97 Am. St. Rep. 692, 58 L. R. A. 471, 52 Atl. 694; *Van Vleck* v. *Van Vleck,* 21 App. Div. 272, 47 N. Y. Supp. 470; s. c., 21 App. Div. 631, 47 N. Y. Supp. 472; see, also, *Re Brackett,* 114 App. Div. 257, 99 N. Y. Supp. 802; affirmed in 189 N. Y. 502, 81 N. E. 1160.)

· MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

Mrs. Sisson, the defendant in this action, desiring to obtain from her husband a divorce and alimony, as well as to gain the custody of a minor child of the marriage, to that end in the month of April, 1921, employed John A. Coleman, an attorney at law then practicing his profession at Lewistown, Montana. Coleman accepted the employment and about May 7, 1921, began the action. According to Coleman's testimony Mrs. Sisson agreed to pay him whatever fee he saw fit to charge, regardless of what the court might allow. Pursuant to this agreement, which was oral, exclusive of the fee allowed by the court, he charged Mrs. Sisson $500 for instituting the action and trial of the same, this fee to be paid when judgment was entered, or sooner if she could afford it. The case was contested by Dan H. Sisson, the husband. During the progress of the action there were several *ex parte* hearings. Finally there was a trial which consumed six days.

Shortly after the action was begun, at the suggestion of Mrs. Sisson, Coleman associated with him as assistant counsel the firm of Cole, Baker & Ulsaker, but upon the express understanding that Mrs. Sisson would pay whatever fee that firm should charge, regardless of Coleman's charge. Cole, Baker & Ulsaker assisted throughout the case from the month of July until the final judgment was entered, which was on January 7, 1922. On that date the court entered final judgment awarding Mrs. Sisson a divorce, custody of the child, $5,000 alimony, an attorney's fee of $250, and costs of suit. On November 5, 1921, and after at least two hearings had been had, but before the main trial, Mr. Coleman and Mrs. Sisson signed an agreement which reads as follows:

"This agreement, made and entered into by and between Annie Sisson of Hobson, Montana, the party of the first part, and John A. Coleman of Lewistown, Montana, the party of the second part, witnesseth:

"That, whereas, the said party of the first part has employed the second party to institute and prosecute to final judgment, an action of divorce wherein the first party is plaintiff, and Dan H. Sisson, her husband, is the defendant, which said action is now pending in the district court of Fergus county, Montana, and, whereas, in consideration of the large amount of legal work and time expended by the said second party and the 'likelihood of extra work and time being required of the second party after judgment in settling the property rights, and in further consideration of the second party using his best efforts to obtain as large an allowance to the first party on judgment in said case:

"It is hereby agreed and promised by the said first party to the said second party that she will pay the said second party as attorney's fee in addition to which may be allowed by the court the sum of $1,000 if the said second party is successful in obtaining an allowance and judgment for $5,000 or up to $7,500 and a further amount in a sum equal to 10 per cent. of any and all sums over and above $7,500. In the event that the allowance made to the said first party shall be in the nature of land or a portion of the land owned by Dan H. Sisson, or part of said allowance shall be money and part land, then the land so allowed or set apart in lieu of a cash allowance shall be deemed to be of a reasonable value of $40 per acre, excluding *pro rata* the mortgage if assumed in part, and such valuation shall be used as a basis for computing all sums to be paid as herein agreed upon.

"The said second party accepts the promises and conditions herein, and agrees to use his best legal and personal effort to obtain as favorable a judgment as he possibly can for the said first party.

                              "ANNIE SISSON.
                              "JOHN A. COLEMAN.

"Witness to signatures:
          "J. C. HUNTOON."

Some time after the entry of judgment Coleman assigned to his wife, Anna Coleman, plaintiff here, his claims against the defendant: One for $500 which he charged for his services· in the action based upon the alleged oral agreement at the beginning of the action, the other for $1,000 based upon the written contract. A little later Mrs. Coleman assigned her interest in "those certain contracts and claims against Annie Sisson" to J. C. Maguire, with the understanding that this action should be maintained in the name of Anna Coleman as plaintiff.

In her complaint plaintiff attempts to allege two causes of action which for convenience simply we shall refer to as counts. The first claims $500 for general services rendered by Coleman in the case of *Sisson* v. *Sisson;* the second is based upon the written contract. While upon the trial the plaintiff abandoned the first count, the second count, upon which she relies, refers to the first. The second paragraph of the first count reads: "That during the month of April, 1921, the said John A. Coleman was employed by the defendant in his professional capacity as an attorney at law to institute a suit in the district court of Fergus county, Montana, against one Dan H. Sisson, for a divorce, custody of child and alimony, and the said John A. Coleman thereupon accepted said employment, and immediately thereafter filed a complaint in the district court of Fergus county, Montana, wherein the said Annie Sisson was plaintiff and Dan H. Sisson was defendant."

The first paragraph of the second count reads: "That on the 5th day of November, 1921, and before the judgment was obtained in the said case of *Annie Sisson* v. *Dan H. Sisson,* mentioned in plaintiff's first cause of action, the defendant promised and agreed in writing to pay the said John A. Coleman an additonal attorney's fee of $1,000 as a special fee, if the said John A. Coleman was successful in obtaining an allowance and judgment in favor of the said Annie Sisson of $5,000 or over, which said written contract was duly executed

by the defendant and the said John A. Coleman, and duly witnessed.''

The second paragraph alleges the obtaining and entry of the judgment above mentioned; that no part of the $1,000 special attorney fee has been paid; then follows an averment respecting the assignment of the claim by John A. Coleman to Anna Coleman, the plaintiff.

In view of the conclusions reached it is not important to discuss the answer of defendant or the reply of the plaintiff. The plaintiff's proof consisted of depositions alone, and these give no information as to the circumstances which led up to the execution of the written contract; nor is any information given explanatory of the conditions surrounding its making. It was written, so Mr. Coleman testified, in his office in Lewistown, in the presence of Mrs. Sisson, another lady and himself, and signed in the presence of J. C. Huntoon, in the latter's office. There is no indication that Mr. Huntoon knew its contents; it seems he merely witnessed the signatures.

Mrs. Sisson testified that she had paid Mr. Coleman $25 to start with, and apparently she did not pay him anything further; nothing was said to her prior to November 5, 1921, about any special or other attorney fees. At the time this agreement was drawn they were in conference about an hour. Apparently the only reason Mr. Coleman assigned for desiring the contract was that he feared without it she might ''back out.'' Julius Sisson, her fourteen-year old son, who said he was present while the contract was being made up, heard Mr. Coleman say to Mrs. Sisson that he wanted her to sign the contract for fear she would back out of the agreement; that was all that was said about it.

The evidence being concluded, the matter was submitted to the court for consideration, after which judgment was rendered for defendant. A motion for new trial was made and denied. The appeal is from the judgment.

1. At the beginning of the trial counsel for defendant [1] objected to the introduction of any evidence upon the

ground that the second count does not state facts sufficient to constitute a cause of action, and this objection was urged throughout the trial. The reasons underlying the objection will be developed in the course of this opinion.

"The compensation of an attorney and counselor for his services is governed by agreement, express or implied, which is not restrained by law." Such is the first sentence of section 8993, Revised Codes of 1921. Practically the same language except the words "which is not restrained by law" is employed in the first sentence of section 9786. The effect of these provisions is to abolish the common-law doctrine of champerty and maintenance in this state relating to contracts for compensation between attorney and client, except in so far as it is retained in modified form in sections 8980 and 8981, Revised Codes of 1921 (formerly 6397 and 6398, Revised Codes 1907), as Mr. Chief Justice Brantly observed in *Haley* v. *Hollenback*, 53 Mont. 494, 165 Pac. 459. The purpose of sections 8993 and 9786 above adverted to was to place the lawyer upon the same footing as other persons, free to make his engagements with his clients as they should agree; or, in other words, to give to them the same freedom to contract as is enjoyed by others of the business world. (*Mason* v. *Ring*, 3 Abb. Dec. (N. Y.) 210; *Fischer-Hansen* v. *Brooklyn Heights R. Co.*, 173 N. Y. 492, 66 N. E. 395; *Thomas* v. *Turner's Admr.*, 87 Va. 1, 12 S. E. 149, 668; *Morton* v. *Forsee*, 249 Mo. 409, Ann. Cas. 1914D, 197, 155 S. W. 765.)

Counsel for plaintiff lays great stress upon the words "which is not restrained by law." But that clause has no special application to the fact condition under consideration here. As we took the first sentence of section 8993, *supra,* *verbatim* from New York, the decisions of that state upon this subject are especially instructive.

In *Ransom* v. *Ransom*, 70 Misc. Rep. 30, 127 N. Y. Supp. 1027, a case in which an attorney had brought suit against his client upon a contract relating to a contingent fee, the court said the words "which is not restrained by law" were

part of a statute drawn to replace a former provision of the Code; "and the object of the codifiers was to give the attorney the same right of contract 'as in respect to every other professional person.' (Report of Code Commissioners, 1848, pp. 204, 205.) The jurisdiction of equity over persons in confidential relations stood untouched." (See *Matter of Howell,* 215 N. Y. 466, Ann. Cas. 1917A, 527, 109 N. E. 572; *Morton* v. *Forsee,* 249 Mo. 409, Ann. Cas. 1914D, 197, 155 S. W. 765, in which a similar statute of Missouri is construed.)

From the authorities it seems clear the law permits attorney and client, before the fiduciary relation begins, to enter into any contract respecting the attorney's compensation, or otherwise, which "is not prohibited by law and does not contemplate the doing of any illegal act." (*Haley* v. *Hollenback, supra.*) But when a contract for compensation is made after the fiduciary relation has commenced, or while it continues, there is cast upon the attorney the burden of showing, not only that no undue influence was used nor advantage taken, but that he gave the client such full information and advice with respect to the matter as to enable the client to act understandingly and freely, as one dealing at arm's-length with another. In other words, the attorney must show, not only that the contract was fair and reasonable, and entered into freely by the client, but that the latter fully knew and understood its provisions. As to the lawyer such a contract must bear the imprint of the utmost good faith. (*Thomas* v. *Turner's Admr., supra; Keenan* v. *Scott,* 64 W. Va. 137, 61 S. E. 806; *Ransom* v. *Ransom, supra; Matter of Howell, supra; Morton* v. *Forsee, supra; Dickinson* v. *Bradford,* 59 Ala. 581, 31 Am. Rep. 23; Weeks on Attorneys, 2d ed., sec. 268.)

Plaintiff, Coleman's assignee, failed to plead or prove a cause of action, and the court ruled correctly in defendant's favor.

2. The court's decision is justified upon another ground. [2] This contract, entered into while a divorce action was pending, providing for an attorney's fee contingent upon

the amount of alimony awarded the wife in that action, is void as against public policy. The public interest demands the maintenance of the marital relation. The law discourages the separation of the spouses—frowns upon divorce—although some may doubt the latter statement in view of the facility with which divorce is too often obtained. "Where differences have arisen which threaten disruption, public welfare and the good of society demand a reconciliation, if practicable or possible." (Mr. Justice Champlin in *Jordan* v. *Westerman,* 62 Mich. 170, 4 Am. St. Rep. 836, 28 N. W. 826.) Ethical lawyers find the adjustment of family differences and the consequent reconciliation of estranged couples not only compatible with their duty to society but profitable from a professional standpoint. Contracts like the one before us, when the attorney is to receive a portion of the money or property obtained from the husband, necessarily tend toward the alienation of husband and wife. The attorney is interested, not in reconciliation, but in alienation. His cupidity serves to direct his action. "The sanctity of the marriage relation, the welfare of children, the good order of society, the regard for virtue, all of which the law seeks to foster and protect, are ample reasons why such a contract should be held to be contrary to public policy." (*Re Sylvester,* 195 Iowa, 1329, 30 A. L. R. 180, 192 N. W. 442; *Barngrover* v. *Pettigrew,* 128 Iowa, 533, 111 Am. St. Rep. 206, 2 L. R. A. (n. s.) 260, 104 N. W. 904; *Jordan* v. *Westerman, supra; Newman* v. *Freitas,* 129 Cal. 283, 50 L. R. A. 548, 61 Pac. 907; *McConnell* v. *McConnell,* 98 Ark. 193, 33 L. R. A. (n. s.) 1074, 136 S. W. 931; *Decker* v. *Decker,* 114 App. Div. 257, 99 N. Y. Supp. 802; *Lynde* v. *Lynde,* 64 N. J. Eq. 736, 97 Am. St. Rep. 692, 58 L. R. A. 471, 52 Atl. 694, a learned and instructive decision by Mr. Justice Pitney.)

We call attention to the fact that our statutes provide that while an action for divorce is pending the court in its discretion may require the husband to pay as alimony any money necessary to enable the wife to support herself or her children,

or to prosecute or defend the action; and ample power is given the court to enforce its orders. (Secs. 5769, 5772, Rev. Codes 1921.) And "where a divorce is granted for an offense of the husband, the court may compel him to provide for the maintenance of the children of the marriage and to make such suitable allowance to the wife for her support during her life, or for a shorter period, as the court may deem just, having regard to the circumstances of the parties respectively, and the court may, from time to time, modify its orders in these respects." (Sec. 5771, Rev. Codes 1921.) In view of these statutes an essential reason which permits contingent fee contracts in ordinary cases is wholly wanting in actions like the present. (*Newman* v. *Freitas, supra.*)

The judgment is affirmed.

*Affirmed.*

ASSOCIATE JUSTICES RANKIN, HOLLOWAY, GALEN and STARK concur.