CLARENCE S. DANIELS, Plaintiff and Respondent, v.
DONALD A. PADDOCK, Defendant and Appellant.

No. 10770
Submitted January 12, 1965. Decided March 3, 1965.
Rehearing denied March 19, 1965.
399 P.2d 740.

208

Vernon Hoven (argued), Missoula, John W. Bonner, Helena, for appellant.

Robert Skelton, Thomas P. Hendricks (argued), Skelton & Hendricks, Missoula, for respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This is an appeal from a judgment entered in the district court of Missoula County following the granting of a motion for summary judgment.

In his complaint, plaintiff alleged that defendant had in his possession money collected by him as attorney for the plaintiff, the property of the plaintiff, in the sum of $15,-304.39; that defendant was entitled to retain the sum of $4,-758.35 for reimbursement of funds paid by defendant on behalf of plaintiff and plaintiff was entitled to the immediate payment of the remainder of $10,546.04; that defendant on or about September 1, 1958, converted the remainder to his own use and failed to notify plaintiff that he had collected the money; that such sum was due and owing to plaintiff, with interest from September 1, 1958, plus additional damages as provided by law. Plaintiff prayed for judgment in that amount, together with interest, trebled as provided by law, and for his costs.

Defendant appeared by motion to dismiss on the ground the complaint failed to state a claim on which relief could be granted; the motion was denied and defendant given 20 days to answer. Defendant answered, alleging that he had no information as to the allegations of the complaint sufficient to form a belief as to the veracity of the same and therefore denied the same, praying that plaintiff take noth-

ing and that defendant have his costs. The answer was served by mail on October 3, 1963, filed on October 7, 1963.

On October 7, 1963, a request for admissions was served upon counsel for the defendant by counsel for the plaintiff. No admissions were received and on October 29, 1963, a motion for summary judgment was served upon defendant by the plaintiff, to be heard on November 13, 1963. Such hearing was thereafter continued to November 18, 1963, and notice given defendant's counsel. On November 18, 1963, plaintiff and his counsel appeared before the court but there was no appearance by nor on behalf of the defendant .

At this hearing, the probate file in the Matter of the Estate of Charles H. Daniels, Deceased, a file of the court, was introduced. The plaintiff was sworn and testified as to the employment of defendant in the estate matter and that the sum of $10,546.04 was due him after all the other heirs had been paid. Randolph Jacobs was sworn and testified that the defendant had brought him an assignment of a contract which was in escrow at the First State Bank at Thompson Falls; about certain correspondence with that bank and receipt of check for $15,304.39 of which $13,051.61 had been applied on defendant's notes and a cashier's check sent to the Western Montana Bank for $2,252.78 for defendant's account. Plaintiff moved the court for a summary judgment based on the complaint, the answer, the interrogatories, the admissions thereof by failing to answer, and upon the evidence introduced. The court at that time took the matter under advisement.

The request for admissions deemed admitted by failure to answer as provided in Rule 36, M.R.Civ.P., discloses that defendant is an attorney at law, that since January 4, 1957, defendant was attorney for the Estate ·of Charles H. Daniels, Deceased, of which estate plaintiff was executor; that on January 4, 1957, the assets of the estate exceeded $18,000 which included a balance due under a contract with J. H. Murphy and Bev Murphy; that prior to January 4, 1957,

all liabilities and expenses of administration of the estate, including claims and attorney's fees, had been paid, except the claims of the contesting heirs which had been compromised and settled at the sum of $7,500; that plaintiff is the residuary legatee under the will and entitled to all property of the estate after payment of expenses and the compromise settlement; that on or about September 1, 1958, the final payment on the Murphy contract was paid to the First National Bank of Missoula, Montana, in the sum of $15,304.39 and was credited to the personal obligations of defendant at his direction; that the sum of $4,758.35 was paid by defendant to the contesting heirs, said sum being the balance then remaining on the compromise settlement and that no other sums have been paid by defendant for or on behalf of said estate or plaintiff; and that on or about August 2, 1963, demand was made of defendant to account for the assets and proceeds of the said estate but the defendant failed to account for the same.

On November 27, 1963, defendant filed a motion to reopen hearing on summary judgment and noticed the same for hearing. At the same time, defendant filed his admissions which were signed by his attorney and the verification states that the admissions made in answer are made from a letter received from the defendant.

The motion to reopen the hearing was argued before the court on November 27, 1963. On December 4, 1963, an affidavit of defendant's counsel was filed which requested that defendant be permitted to respond to the request for admissions in accordance with the admissions of defendant then on file.

On December 5, 1963, a summary judgment was granted by the court. Defendant's motion to reopen the hearing was denied on December 17, 1963.

On December 19, 1963, defendant filed a notice of motion and motion for new trial. On the same day defendant filed a notice of motion and motion to amend judgment. The

presiding judge was disqualified, as well as a second judge, and the Honorable Victor H. Fall of Helena was called in and accepted jurisdiction. Judge Fall stayed proceedings pending disposition of the motions. On January 17, 1964, the minutes of the court show that Judge Fall heard arguments upon the respective motions and then reopened the matter and set the hearing to commence on January 27, 1964. On January 21, 1964, to effectuate his action on January 17, 1964, Judge Fall issued an order to show cause, directed to the defendant, requiring him to appear and show cause, if any he had, why the summary judgment of December 5, 1963, should not remain in full force and effect.

On January 27, 1964, the parties appeared before the court and the following transpired:

"THE COURT: Very well, this is the time set in cause No. 26699, CLARENCE S. DANIELS vs. DONALD A. PADDOCK.

"Is the plaintiff ready to proceed?

"MR. SKELTON: Yes, your Honor.

"MR HOVEN: Yes, your Honor.

"THE COURT: The record will show that after assuming jurisdiction in this matter I appeared on January 17th at which time I ruled that the judgment heretofore made and entered by Judge Green would be opened up for further testimony and set for further hearing this morning at 9:30 o'clock.

"It is the position of the Court, Gentlemen, that based upon the record heretofore made in this case, and upon the Judgment entered by Judge Green, the Answer and the Admissions filed by the defendant, the allegations of the plaintiff's Complaint that we can proceed at this time as though a prima facie case has been made by the plaintiff to this extent: That it is proven to this Court satisfactorily that there was a balance due, there was a sum of $10,900 in the Daniels' estate, but that sum was paid to the defendant, Paddock; that he did not pay it over to the plaintiff here.

"Now, that is the only assumption the Court makes in this case, and we are here today to find out why or if there was any obligation to do so, and as I read and understand the affidavit filed on behalf of the defendant, he states that he was under no obligation to pay that sum or any other sum over to plaintiff, Charles S. Daniels, by reason of a certain document of documents or agreement or whatever it may be, and that's what I am here today for, Gentlemen, do I make myself clear?

"MR. HOVEN: Yes.

"THE COURT: Is the defendant ready too with that understanding?

"MR. HOVEN: We are, your Honor.

"THE COURT: Is there any exception?

"MR. HOVEN: We accept that and make no exception to the Court's ruling."

Following the hearing, an order was entered on February 10 and filed on February 11, 1964, which denied the defendant's motion to amend judgment and motion for new trial, vacated the order staying proceedings, and adjudged the summary judgment entered on December 5, 1963, to be in full force and effect. This appeal was taken by defendant on February 14, 1964.

Defendant specifies error by the court in (1) granting the motion for summary judgment; (2) in not permitting the defendant to file his admissions and to reopen hearing on summary judgment; (3) in refusing to grant a new trial; (4) in refusing to amend the judgment; and (5) in not entering judgment for the defendant.

As to the first specification it is argued by defendant that under Rule 56(c), M.R.Civ.P., that the court is limited to the pleadings, depositions and admissions on file in determining that there is no genuine issue as to any material fact, and when witnesses are sworn and testimony produced and used by the court in its consideration and determination of the motion, such procedure is not permitted.

In this connection we call attention to Rule 43(e), M.R. Civ.P., which provides:

"(e) *Evidence on Motions*. Except as otherwise provided in Rule 56, when a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or depositions."

The exception noted in connection with Rule 56 is the provision against the use of affidavits to show facts not appearing of record on a motion for summary judgment, which does not exclude the use by the court of oral testimony upon such motions. Our Rules are patterned after the Federal Rules and federal courts have ruled that oral testimony may be considered upon motions for summary judgment.

In 3 Federal Practice and Procedure, Barron & Holtzoff, p. 162, this appears:

"The court may even hear oral testimony on a motion for summary judgment if it so desires. Rule 43(e), which authorizes the use of oral testimony on motions, has been held applicable to motions for summary judgment."

Vol. 6, Moore's Federal Practice, p. 2084, states:

"Rule 56(c) does not mention oral testimony as materials to be used at the summary judgment hearing. But Rule 43(e) permits the court to hear oral testimony at a hearing on a motion. Accordingly the court may properly accept and consider oral testimony in a summary judgment proceeding."

However, as Professor Moore further comments, caution should be exercised that a summary judgment hearing does not become in effect a trial to determine if a trial should be held.

See Burnham Chemical Co. v. Borax Consolidated (C.A.9th, 1948) 170 F.2d 569; Sexton v. American News, D.C., 133 F. Supp. 591; Fleming v. Phipps, D.C., 35 F. Supp. 627; being

cases in which oral testimony was received and considered by the court on motion for summary judgment.

This claim rests upon section 93-2106, R.C.M.1947, which reads:

*"Punishment for willful delay.* An attorney and counselor who willfully delays his client's cause, with a view to his own gain, or willfully receives money, or an allowance for or on account of money, which he has not laid out or become answerable for, forfeits to the party injured treble damages."

■ In view of the provisions of this statute, and entirely disregarding the oral testimony, it seems clear that the pleadings and the admissions deemed admitted by failure to respond show that there was no genuine issue as to any material fact and that the plaintiff was entitled to a judgment as a matter of law.

As to the second specification it is argued that since the admissions and the motion to reopen hearing on summary judgment were presented prior to the signing of the judgment the court was in error in not permitting the admissions to be filed and in not reopening the hearing.

■ We find no court order prohibiting the filing of the admissions, they were filed on November 27, 1963, the same day the motion to reopen was filed. Counsel for both parties stipulated that the motions might be argued before the court on that same day and they were so argued, time for filing briefs granted by the court, the matter to be submitted when the briefs had been filed. It is apparently defendant's contention that the court was required to make a specific order with regard to the admissions but we fail to see the necessity. They were filed and before the court for such consideration as the court desired to give them. We make no other comment other than the intent of Rule 36, M.R.Civ.P., is that the party served shall make a sworn statement of the truth of any relevant matters of fact set forth in the request for admissions. Whether such a response as

was filed here, signed by counsel and verified by counsel as being made from a letter received from the defendant meets the intent of Rule 36 was a matter resting within the discretion of the court.

We shall further discuss the motion to reopen the hearing under the next specification.

As to the third specification that the court erred in refusing to grant a new trial. We shall not undertake here to discuss the propriety of a motion for new trial in a summary judgment proceeding for, in our view, this is precisely what the court granted, it reopened the matter for a full hearing, permitted the receipt of all evidence bearing upon any and all issues raised by the pleadings, motions, affidavits, in fact a thorough review of every facet of the case. In his brief, defendant limits his argument to the matter of newly-discovered evidence, such being certain exhibits which were offered and received in evidence upon the hearing and consisted of an assignment of vendor's contract, a promissory note and a mortgage. It is defendant's contention that these instruments constitute a complete defense to the claim of the plaintiff and that the court would have to so find. We shall discuss this contention together with the fifth specification, being that the court erred in not entering judgment for the defendant.

In this respect we have heretofore quoted Judge Fall's statements made at the beginning of the hearing on January 27, 1964. This manner of procedure was agreeable to defendant, and the judge permitted all the testimony and documents that either side presented to be received. We have heretofore for the most part confined our discussion to the various papers filed in this matter, but now we will turn to a brief review of the evidence, to what was shown at this hearing which defendant argues is a complete defense and should have resulted in judgment being entered in his favor.

At a very early point in this hearing certain objections

216

were made by counsel for plaintiff, and the judge then remarked:

"Well, now, Gentlemen, perhaps to clear the air to make for more speedy hearing of this thing, regardless of whether it is hearsay or what it is I propose to permit each side to introduce practically anything that you wish in regard to that—before this Court. There are many technical rules of evidence which might be invoked in a hearing of this kind, and I made it very clear on the 17th that I intended to find out all about this as far as I can, and I intend to probe into the matter of the consideration for this assignment, if any, and I intend to hear all of these things, and I will waive it. This is not a jury case, and I intend to go to the bottom of this thing, if I can."

This clearly illustrates the freedom of counsel to present whatever they desired upon the hearing.

Also, at the close of the hearing counsel for defendant in making a motion observed that he was doing so on the assumption that the hearing was on the merits and was advised by the court: "This matter will be considered having been heard and being submitted to the court now on its merits."

Plaintiff's father died and the firm of Shallenberger and Paddock were employed to probate the estate. There was a will contest which was compromised under a stipulation providing that the contesting heirs would receive $7,500 and interest thereon until paid by the estate, and to be paid as payments were received by the estate from certain contract payments. Shallenberger became a judge on January 4, 1957, and retired from the practice of law and the estate matter remained in the office of defendant.

There was $3,339.55 in the estate account and it was paid to the attorney representing the contesting heirs. There was a contract which had been executed by the deceased father of plaintiff with J. H. and Bev Murphy for the sum of $21,-000 and at the time of the appraisal the balance due thereon was $16,800 plus interest.

Plaintiff owned a ranch upon which there was a mortgage in the sum of $6,000. A foreclosure action was instituted against plaintiff in May of 1957. A great deal of testimony was received with reference to conversations at meetings between plaintiff and defendant and others who were present, communications made by letter and telephone, and it appears that it was finally agreed that defendant would pay off the mortgage on the plaintiff's ranch and take a mortgage as security for the loan. On August 20, 1957, the attorney for the mortgagee met plaintiff and defendant at defendant's office in Missoula and defendant gave to the attorney a check to satisfy the mortgage in the sum of $6,493.59. A mortgage was executed by plaintiff to defendant in the sum of $6,500 to secure this loan, which mortgage is still held by defendant and in late December of 1962 defendant threatened to foreclose this mortgage and demanded the sum of $12,003.16 in liquidation of the indebtedness. The mortgage note bears interest at eight and one-half percent; the mortgage provides that any and all advances shall draw interest at the rate of ten percent per annum. Defendant justifies the amount claimed to be due on this indebtedness by computing interest at ten percent upon delinquent interest on an annual basis.

On the same day the note and mortgage above referred to were executed, August 20, 1957, plaintiff executed an assignment of the Murphy contract to defendant. On September 23, 1957, defendant paid to counsel for the contesting heirs the sum of $4,758.35 which was the balance due them under the stipulation compromising the will contest.

During September of 1958 the Murphys sold the ranch they had been purchasing under the contract and on September 8, 1958, a final payment was made in the sum of $15,304.39, which sum by virtue of the assignment from the plaintiff was received by the defendant personally.

As to the execution of the assignment, the testimony is conflicting as to the purpose for which it was executed.

Counsel for the mortagee holding the original mortgage on plaintiff's ranch was requested by defendant to prepare a form of assignment and did so, and he testified that defendant told him the assignment was for additional security.

Plaintiff testified as to many conversations with defendant with respect to defendant financing him so that he could get the mortgage being foreclosed on his own ranch straightened out and get the contesting heirs paid off, the culmination of which was the agreement that defendant would go ahead and take over the mortgage providing that plaintiff would sign the papers and as the money came in on the contract defendant would pay off the mortgage and when the mortgage was paid off the balance of the money would be plaintiff's. At the time of the execution of the papers it was not known that the Murphys would sell their land and payment be made in the short interval that actually occurred.

Defendant's version of the deal, while somewhat difficult to follow from his testimony and the various exhibits introduced because of conflicts between his own testimony and his own letters, would appear to be that because plaintiff could not secure financing from any other source he agreed to finance him under approximately this arrangement: Defendant asserted he would be required to expend approximately $13,922 on account of the plaintiff and that because the assets offered by the plaintiff were of such questionable value and the advancements would be repaid over an extended period of time, he would only undertake the deal on the basis of 66¢ on the dollar. Thus in defendant's view, Daniels had a mortgage for $6,500 and expending $13,922, or a total of $20,422 at which 66¢ on the dollar would result in a figure of approximately $13,922 for which he received $15,304.39. Other items were mentioned which would reduce the difference between the expenditures and receipts to a lesser amount but exactitude for our purposes is not re-

quired, nor would it be possible under defendant's own evidence.

Defendant's position, as expressed in another way, is that he would only accept the deal if the Murphy contract was taken over by him at 66¢ on the dollar and according to his testimony he purchased it outright for the approximate sum of $9,600. Defendant denied that the assignment was made for security purposes, insisting that it was a sale, an outright purchase by him.

One matter is most glaring in all accounts of the transaction, that is that in totaling expenditures made or contemplated, defendant continually inserts the figure of $6,500 to reach his various totals and for this $6,500 he has a note secured by a mortgage on plaintiff's ranch as hereinbefore referred to. He is secured for this amount and it cannot be added to other items in arriving at any contended expenditures made by defendant on account of the assignment of the Murphy contract.

The probate estate file shows as the last instrument the withdrawal of Shallenberger as one of the attorneys for the estate, filed on January 4, 1957. A final account and petition for distribution was filed on December 27, 1954, an order determining inheritance tax was filed on October 3, 1956, but the estate has never been distributed.

The only reason the contract could have been assigned without appropriate court proceedings was that it was in escrow in a bank and defendant handled the matter through such escrow agent.

It is not possible to compute from the testimony or the exhibits introduced in this matter the totals contended for by defendant; letters written by him in explanation of the deal are not consistent and all refer in generalities as to amounts. Items claimed as expended are subject to question, for instance in his computations he claims approximately $1,200 as attorney's fees growing out of the estate. In the

order determining heirship these fees are claimed at $1,320.00; a check from the executor of the estate to Shallenberger & Paddock, dated Dec. 27, 1954, in the sum of $1,029.85 is marked "a/c fees and costs." Another check from the estate payable to Don Paddock is in the amount of $10 dated Feb. 13, 1956, and marked "Attorney's Fee." Defendant also claims a credit of $283 paid to a creditor of plaintiff. There is proof in the record that this sum was not paid and remained at the time of the hearing due and owing to the creditor.

The Honorable Victor H. Fall filed an opinion with his order in this matter and therein stated:

"The defendant Paddock explained on the witness stand that all of his adult life he has engaged in the business of purchasing land contracts and mortgages as investments; that this was the business of his mother and father and that he fully understands this type of investment and that as he analyzed the potential of the property of Clarence S. Daniel he determined that it was worth 66 2/3 cents on the dollar, and that after learning of the obligations of the plaintiff he agreed to purchase this property at that discount. It is interesting to note that 66 2/3% of $20,989.28 is $13,922.85, or almost to the cent the sums which Paddock paid, or claims to have paid in liquidation of the obligations of Clarence Daniels. The only items paid by Paddock of which there was clear cut proof were $6,493.59 paid to Libra to liquidate the Kansas City Life Insurance Company mortgage, $4,758.00 paid to George F. Higgins to liquidate the balance of the settlement with the other Daniels children, the sum of $52.50 also paid to Higgins as part of that proceeding, the sum of $120.00 paid to Al Libra and the sum of $23.50 paid to Mr. Mahoney. There is a direct conflict as to whether the bill to Cross and Butte was paid at all and there is nothing to support the matter of the $1,200.00 referred to above other than the testimony of the defendant.

"If the foregoing transaction had been between two lay-

men of equal capacity this Court would not be inclined to disturb it. However, a far different situation exists when an attorney is dealing with the funds and affairs of a client. As a financial transaction between an attorney and client it is the opinion of this Court that it cannot be permitted to stand.

As before noted this action is brought under the provisions of section 93-2106, supra, and is a proceeding involving an attorney and his client, and grows out of the probate of an estate.

It requires no citation of authority to remark that the relation of attorney and client has always been regarded as one of special trust and confidence.

"When a transaction between an attorney and his client is attacked, the burden is cast upon the attorney to prove that it was not influenced by the relationship. He must show that it was made in the best of faith and without disadvantage to the client, that it was fair and equitable, and that the client was fully informed of his rights and interests in the subject-matter of the transaction, of the nature and effect of the transaction itself, and was so placed as to be able to deal with the attorney at arm's length. This is especially true in the case of an assignment or conveyance from the client to the attorney, or where the attorney takes a mortgage from the client." (5 Am. Jur., Attorneys at Law, § 50, p. 289.)

And in Moore v. Rochester-Weaver Mining Co., 42 Nev. 164, 176, 174 P. 1017, 1020, 19 A.L.R. 830, it is stated:

"No principle has been so rigidly adhered to by the courts of this country and England than that where an attorney deals with his client for the former's benefit, the transaction is not only regarded with suspicion and closely scrutinized, but it is presumptively invalid on the ground of constructive fraud, and that this presumption can be overcome only by the clearest and most satisfactory evidence."

222

While not considering facts comparable to the ones now before us, our court in Coleman v. Sisson, 71 Mont. 435, 443, 230 P. 582, 584, did speak with reference to the burden of proof required of an attorney as to a contract for compensation and the same principles would apply here. The court said:

"From the authorities it seems clear the law permits attorney and client, before the fiduciary relation begins, to enter into any contract respecting the attorney's compensation, or otherwise, which 'is not prohibited by law and does not contemplate the doing of any illegal act.' Haley v. Hollenback, supra. [53 Mont. 494, 165 P. 459.] But when a contract for compensation is made after the fiduciary relation has commenced, or while it continues, there is cast upon the attorney the burden of showing, not only that no undue influence was used nor advantage taken, but that he gave the client such full information and advice with respect to the matter as to enable the client to act understandingly and freely, as one dealing at arm's length with another. In other words, the attorney must show, not only that the contract was fair and reasonable, and entered into freely by the client, but that the latter fully knew and understood its provisions. As to the lawyer such a contract must bear the imprint of the utmost good faith. Thomas v. Turner's Admr., supra; [87 Va. 1, 12 S.E. 149]; Keenan v. Scott, 64 W.Va. 137, 61 S.E. 806; Ransom v. Ransom, supra; [70 Misc. R. 30,] [127 N.Y.S. 1027], Matter of Howell, supra; [215 N.Y. 466, 109 N.E. 572]; Morton v. Forsee, supra; [249 Mo. 409, 155 S.W. 765]; Dickinson v. Bradford, 59 Ala. 581, 31 Am.Rep. 23; Weeks on Attorneys, (2d Ed.) § 268."

Guided as we must be by these principles and the statutes of Montana with respect to the relationship of attorney and client, the provisions of the probate law with respect to the handling of estate property, the facts produced by defendant at the hearing fall far short of carrying his

burden and in fact bring us to the conclusion that defendant's actions herein with respect to the assignment of the Murphy contract are tainted with fraud.

Insofar as the court held that plaintiff should prevail upon his claim, we affirm.

Now, as to the fourth specification, the refusal of the court to amend the judgment, it being the contention of the defendant under his motion to amend that the court erroneously trebled the damages awarded. From what we have heretofore stated we find no merit to defendant's argument that such action was erroneous under section 93-2106, supra, but as to the item of interest we do find merit.

The court here found for the plaintiff the sum of $10,546.04 plus statutory interest from September 1, 1958; totaled the two and trebled such amount, thereby arriving at the figure used in the judgment of $41,525.01.

We believe that the provision of the statute, section 93-2106, supra, wherein it states: "* * * forfeits to the party injured treble damages," means only the actual damages may be trebled. In this action it appears that the actual damages were the sum of $10,546.04; this amount should be trebled to the figure of $31,638.12, to this sum should be added statutory interest on $10,546.04 from September 1, 1958 to December 5, 1963, the date of entry of the judgment; the total judgment to bear statutory interest from December 5, 1963, until satisfied.

By reason of our disposition of this cause we observe no reason to rule on the various motions to dismiss the appeal filed by plaintiff.

The cause is remanded to the district court with instructions to amend its judgment in accordance with what has been heretofore stated and as so amended and entered the judgment is affirmed.

MR. JUSTICES JOHN CONWAY HARRISON, DOYLE, ADAIR and CASTLES concur.