[No. 38394. En Banc. September 26, 1968.]

ROBERT T. KENNEDY, *Respondent and Cross-appellant*, v. V. D. CLAUSING *et al.*, *Appellants.**

*Reported in 445 P.2d 637.

*Jarvis, Kelleher, Allen, Skellenger & Bovy,* by *Richard Kelleher* and *Aiken, St. Louis & Steere,* by *Charles E. Siljeg,* for appellants.

*Mucklestone & Mucklestone,* by *John P. Mucklestone,* for respondent and cross-appellant.

HUNTER, J.—This is an appeal from a jury verdict and judgment entered in favor of the plaintiff (respondent), an attorney, in an action to recover legal fees from the defendant V. D. Clausing, an osteopathic physician, and his marital community (appellants), who will be referred to as the doctor or the defendant.

The plaintiff predicated his claims upon two verbal contingent fee contracts entered into between the plaintiff and the defendant during the course of their attorney-client relationship. Alternatively, the plaintiff sought judgment for the reasonable value of his services. The doctor admitted that legal services had been performed for his marital community by the plaintiff, denied the existence and validity of any contingent fee agreements, and alleged payment in full, or willingness to pay, any reasonable balance found due.

In June, 1960, the defendant doctor engaged the services of the plaintiff to prevent an alleged building and zoning violation by property owners adjacent to the defendant's medical clinic. Whether the plaintiff was to be compensated upon an hourly rate for his services is in dispute. Considerable time and effort were expended by the plaintiff in

processing the claimed violation through two administrative agencies and in initiating proceedings for judicial review of adverse administrative rulings. A substantial fee accrued when calculated on a straight time, hourly basis. Following the first administrative hearing, the plaintiff billed the defendant in the amount of $652.50. The defendant then paid $500 and subsequent credits were allowed. The plaintiff contended the billing was for the first administrative hearing only, whereas the defendant contended the amounts paid and credited against the account fully and reasonably compensated the plaintiff for all work involved in the building and zoning violation matter. Whether all steps taken by the plaintiff were authorized by the defendant, legally prudent, or productive of a satisfactory result are the source of conflicting viewpoints under the evidence.

In the meantime, the defendant, who was a sports car enthusiast, had become financially involved in an automotive repair business partnership. He soon became dissatisfied with the business. At the outset of this venture and periodically thereafter he consulted with and sought the advice and assistance of the plaintiff. Finally, in April, 1961, and while the building and zoning violation matter was still in progress, the defendant asked the plaintiff to dissolve the partnership or otherwise extricate him from the business. Again, the way in which the plaintiff was to be compensated is in dispute. The plaintiff asserts that an hourly rate of $25 was agreed upon. The defendant, however, testified that $250 was the fee initially agreed upon, which together with additional credits against the account adequately compensated the plaintiff for his services. The partnership matter was complicated and in processing it to successful conclusion the plaintiff instituted three justice court actions and one superior court action, and otherwise devoted substantial time to the matter. The evidence is conflicting as to whether all of plaintiff's time, activities, and proceedings were reasonably necessary to the end result.

The plaintiff alleges that by January, 1962, there had accumulated, calculating upon an hourly straight time

basis, a total of approximately $7,000 in unpaid fees for both the zoning violation and the partnership matters, neither of which had yet been concluded. The defendant maintains that he was not aware of this computation of fees. Nevertheless, at this time, the defendant discussed with the plaintiff and an associate a further matter. This involved a potentially profitable sale of approximately 4½ acres of land owned by the defendant in West Seattle. The testimony indicates that the defendant had acquired the property for approximately $19,000 and had been offered $102,000 for it. It appeared, however, that any sale at a substantially increased value depended upon rezoning the property from residential to business or commercial use. Prior efforts by the defendant to rezone his property had proved unsuccessful, and attorneys who the defendant contacted had refused to undertake the rezoning matter without a fixed fee contract. The plaintiff indicated that he might evolve a legal theory under which the desired rezoning could be accomplished. The defendant was interested and enlisted the plaintiff's services. From this point on, the testimony is in conflict. According to the plaintiff's evidence, the defendant chided him regarding fixed fee arrangements, following which the plaintiff indicated he would undertake the rezoning project on a contingent fee basis, with his fee to be one-third of the enhanced value of the property if the rezoning was accomplished. The plaintiff's evidence then indicates that the defendant suggested that the contingent fee be 50 per cent of the enhanced value, provided the arrangement included the conclusion of all work yet to be done on the prior zoning and partnership matters together with the satisfaction of all fees involved. The plaintiff testified that he reluctantly, and at the defendant's urging, accepted this arrangement. (There is an inconsistency between the plaintiff's pleadings, the pretrial order, and his evidence as to the precise basis upon which the 50 per cent contingent fee was to be calculated. However, the trial court submitted the issue of the existence of this contingent fee contract to the jury on the basis of the

fee being equal to 50 per cent of the increased value of the property after rezoning.) The defendant, on the other hand, denied that any discussion or arrangement relative to contingent fees took place. Instead, he asserts he understood that the plaintiff would proceed with the work and submit a bill for a reasonable sum when the services were concluded. He also maintains that the alleged contingent fee arrangement is unrealistic, unreasonable, and exorbitant considering the professional services involved.

The plaintiff promptly prepared a petition for rezoning the West Seattle property, collected data in support of the petition, and processed it through the city planning commission and the city council. The petition was denied. Thereafter, in early 1963, the defendant, who was then recovering from a nervous breakdown suffered in November, 1962, prepared and presented a second petition to the city planning commission without the plaintiff's knowledge. This petition was denied by the planning commission and review was scheduled before the city council in March, 1963. Shortly before the review was to be heard, the defendant, still undergoing psychiatric treatment for his nervous condition, requested the plaintiff's assistance. At about this time, according to the plaintiff, the contingent fee arrangement was again discussed and reaffirmed. The plaintiff obtained a continuance of the scheduled review hearing and, working with other interested persons, aided in collecting and assembling data to support a rezoning. The material was presented to the city council on May 8, 1963, and the rezoning was granted. Thereafter, the plaintiff maintained that he was entitled to his contingent fee. The jury, as above indicated, found in favor of the plaintiff on this issue in the sum of $47,250, inherently including appropriate allowances for credits against the amount.

Meanwhile, during the latter part of 1961 and the early part of 1962, the defendant had reorganized and revitalized his automotive repair business. He acquired a new partner, a business associate, and a controlling share in a corporate structure. The business seemingly prospered until Novem-

ber, 1962, when internal dispute and distrust erupted. The defendant immediately recruited the plaintiff's services and was then hospitalized for the nervous breakdown mentioned above.

The plaintiff, working with the defendant's brother, devoted substantial time during November and December, 1962, and the early part of 1963, to salvaging the defendant's interest and investment in the business. A lawsuit was commenced in furtherance of this objective. It is agreed that the plaintiff initially undertook the work for a fee to be calculated upon an hourly basis; however, the hourly rate is in dispute and the reasonableness of the time expended is challenged. By March, 1963, and despite various credits to the account, a considerable fee had accrued when computed on an hourly basis. The financial picture of the defunct business, from the standpoint of recouping the defendant's investment, was still not free of doubt, although the physical plant had been leased to another operator in January, 1963. Likewise, the lawsuit, which had engendered a cross complaint against the defendant, was unresolved although a favorable settlement was pending. Why the lawsuit had not been earlier settled and whether the defendant was fully advised of the settlement negotiations are the subject of conflict in the evidence.

On or about March 15, 1963, following a consultation with his psychiatrist, the defendant advised the plaintiff that his mental health required that he forego business interests and responsibilities outside of his medical practice. He then stated he would give the plaintiff the remaining partnership and corporate interests in the automotive repair business if the plaintiff would assume all liabilities in connection with the business. The plaintiff testified that in response, he informed the defendant that if he could have a free rein in liquidating the business, and a contingent fee of 50 per cent of all moneys realized over and above the liabilities, he would wind up its affairs and hold the defendant harmless from any outstanding liabilities. At the defendant's request, a written agreement to this effect was prepared by the plaintiff and delivered to the defend-

ant. The evidence is not clear as to whether the defendant and his wife signed the agreement. No signed document was offered or introduced in evidence. Following this conversation the plaintiff settled the pending lawsuit, dissolved and liquidated the partnership and corporate interests, participated or assisted in leasing or selling the remaining assets, and paid off the liabilities. Approximately $30,000 then remained.

With respect to this second asserted contingent fee arrangement, the defendant contended that the minds of the parties did not meet, that the plaintiff did not fully and fairly advise him of the status of the pending lawsuit or of his rights with respect to the liquidation of the business, that the plaintiff acquired an adverse and conflicting interest in the business, and that the plaintiff had received and retained from various collections sufficient amounts to fully and reasonably compensate him for such necessary and effective time as he expended in concluding the transaction.

The claimed adverse interest, to which the defendant adverts, arose in late November, 1962. One of the defendant's associates in the corporate-partnership arrangement was arrested and jailed on a criminal charge. He was needed on the premises of the business to assist in untangling the confused financial and auto repair obligations. The plaintiff testified that, with the defendant's knowledge and acquiescence, he was specifically requested by the defendant's brother to attempt to obtain the associate's release from jail at the associate's expense. This the plaintiff did, and as his fee for the service accepted an assignment of a claim against the corporate enterprise which the associate was threatening to assert. This action, the plaintiff contends, relieved the business enterprise of a potentially thorny liability, which was thereafter merged in the contingent fee arrangement and was never collected from or charged against the defendant. The defendant's evidence disputed the plaintiff's version of this event.

By pretrial order the issues were essentially reduced to the existence and validity of either or both of the alleged

contingent fee contracts, and alternatively, to whether the defendant had fully paid the reasonable value of the services performed. The ensuing jury trial was a protracted one, consuming some 16 trial days. More than 140 exhibits were introduced, and the testimony of witnesses represents some 1,365 pages of the statement of facts.

The jury returned a verdict with special interrogatories finding the existence of the asserted contingent fee contracts and awarding plaintiff the sum of $47,250 on the first contract, as heretofore stated, and the sum of $12,352 on the second contract. The defendant appeals from the judgment entered upon the jury verdict. The plaintiff cross-appeals from the trial court's disallowance of interest on the contracts from the date of completion.

The defendant's first contention is that the jury was improperly instructed concerning the burden of proof to be borne by the plaintiff in establishing the enforceability of the contingent fee contracts. The defendant challenges the correctness of the following instruction given by the trial court:

If you find that:

1. Due to the defendant's mental condition or the relationship of trust and confidence between the attorney and client, the defendant was acting under duress, undue influence or coercion; or

2. That the plaintiff failed to fully and fairly apprise the defendant as to his legal and economic position, respecting a particular contract for legal services, then such express contract cannot be enforced and you will not bring in a verdict based on such an agreement.

The defendant has the burden of proving the foregoing by a fair preponderance of the evidence. The defendant likewise has the burden of proving payment by a fair preponderance of the evidence. (Instruction No. 5.)

■ The rule as to the burden of proof in an action to enforce a fee contract entered into after the attorney-client relationship exists has not been heretofore clearly enunciated by this court. However, in *Albert v. Munter,* 136 Wash. 164, 239 Pac. 210 (1925), we indicated the view this

court would adopt in such cases; the rule followed in most states and recognized by current text authorities. In *Albert v. Munter,* we said at 175:

> Nevertheless it is true that, even in a jurisdiction where attorneys and parties are authorized by statute to make contracts for compensation of the attorneys during the existence of the relation of attorney and client, the contract may be considered void, or voidable, until it is shown by the attorney that the contract with his client was fair and reasonable, free from undue influence, and made after a fair and full disclosure of the facts upon which it is predicated.

■ To clarify our past decisions, we now adopt the foregoing language from the *Albert v. Munter* case as the rule in this jurisdiction. See also *Fein v. Schwartz,* 404 S.W.2d 210 (Mo. App. 1966); *Rupp v. Cool,* 147 Colo. 18, 362 P.2d 396 (1961); *In re Schanzer's Estate,* 7 App. Div. 2d 275, 182 N.Y.S.2d 475, *aff'd* 8 N.Y.2d 972, 204 N.Y.S.2d 349, 169 N.E.2d 11 (1959, 1960); 10 Williston on Contracts § 1285 (3d ed. 1967). Instruction No. 5, *supra,* is in error insofar as it places the burden upon the defendant to prove undue influence and lack of fair and full disclosure by the attorney. However, we are convinced that, had the instruction on the burden of proof on these issues been given in strict conformity with the rule announced herein, there can be no question under this record and the other instructions given but what the result would have been the same. Accordingly, the defendant was not prejudiced by the instruction as given. An erroneous instruction which is not prejudicial is harmless error and will not justify awarding a new trial. *State v. Martin,* 73 Wn.2d 616, 440 P.2d 429 (1968), and cases cited.

The trial court correctly instructed the jury, under instruction No. 4, that the plaintiff attorney was required to prove that the two contracts were fair and reasonable:

> For the plaintiff to recover on an express contract for legal services performed by the plaintiff on behalf of the defendant, the plaintiff has the burden of proving, by a fair preponderance of the evidence:

1. That the parties had a meeting of the minds resulting in a contract between them as to
   (a) the work to be done by the plaintiff, and
   (b) the compensation to be paid, and
2. That the agreement was fair and reasonable.

The finding that the plaintiff proved that the contracts were fair and reasonable thus inheres in the jury verdict. This finding, in our opinion, negates the possibility that the jury could have determined that the evidence showed duress, undue influence, coercion, or failure by the attorney to disclose necessary facts. Moreover, by instruction No. 5, as given, the issues of duress, undue influence, coercion and failure to disclose were clearly before the jury; and by its verdict it found against the defendant on these issues.

The verdict demonstrates that the jury believed the testimony of the plaintiff, which, considered in the light of the defendant's high level of intelligence, familiarity with the legal profession, and extraordinary business acumen, reasonably resulted in the conclusion that the defendant was fully aware and informed of all that was involved in forming the contracts, and that the defendant was not coerced, deceived or overborne by the plaintiff in any manner. As an example of the defendant's singular talents as a man of affairs, the record shows that while he was hospitalized recuperating from a nervous breakdown, he dictated 13 pages of instructions to the plaintiff attorney concerning the conduct of matters in the plaintiff's hands. Thereafter, in early 1963, as heretofore stated, the defendant prepared and presented his own petition to the city planning commission in the rezoning matter, without consulting the plaintiff. The record is also replete with examples of the defendant's widespread and ambitious business ventures, and his past involvements in litigation.

We approach the record and issues in this case in the same manner as we did in *Albert v. Munter, supra.* In that case the trial court made no finding as to the issues of duress, coercion or disclosure. Yet this court did not invalidate the contract, but affirmed the trial court. We there said at 176:

In this case, as the lower court found, and on the whole record, we have no doubt whatever that the contract in question was entered into fairly and understandingly, was acted upon by respondents with great skill, energy and fidelity, that their services were multifarious and valuable, that they could not have foreseen the ultimate result of their activities in behalf of appellant, and that a contingent contract for their attorney's fee on his and their part was almost unavoidable. We are, therefore, well satisfied to sustain the findings of the trial court as to the reasonableness, good faith and enforcibility generally of the contract.

There is a much stronger basis for enforcing the contracts in the instant case than the contract in *Albert v. Munter, supra.* Here, the jury has found by its verdict that there was no duress, undue influence, coercion or failure to disclose, in addition to finding that the plaintiff has proved the contracts to be fair and reasonable. Further, the plaintiff attorney in this case was unusually successful in the representation of his client, and his services pursuant to the contracts were remarkably valuable. All of the foregoing reasons make it inconceivable to us that the defendant was prejudiced by instruction No. 5, given in this case.

The defendant further contends that it was error to refuse to give his offered instructions Nos. 3, 4 and 5. We will not set out these instructions here. It suffices to say that they substantially reflect the correct rule as to burden of proof, but are infected with repetition and overemphasis to such a degree that we could not approve them as written, and accordingly, we do not find error in the trial court's refusal to give them.

The defendant also assigns error to the trial court's refusal to give his additional requested instruction No. 3, which reads:

If you find that:

1. Due to the defendant's mental condition or the relationship of trust and confidence between the attorney and client, the defendant was acting under duress, undue influence or coercion; or

2. That the plaintiff failed to fully and fairly apprise the defendant as to his legal and economic position, re-

specting a particular contract for legal services, then such express contract cannot be enforced and you will not bring in a verdict based on such an agreement.

The plaintiff has the burden of proving the foregoing by a fair preponderance of the evidence. The defendant likewise has the burden of proving payment by a fair preponderance of the evidence.

It was proper to refuse this instruction because it is obviously incoherent and incorrect, in that it requires the plaintiff to prove the affirmative defenses of the defendant. The defendant's contention is without merit.

The defendant next contends that the evidence was insufficient to warrant submission to the jury of the two contingent fee contracts. We do not agree, because the record does contain direct, corroborative and circumstantial evidence which considered together supports the formation and execution of the alleged contracts. Further, there is substantial evidence in this record from which the jury could determine the amounts due if the contracts were found to exist.

The defendant contends that the trial court erred in giving its instructions Nos. 4 and 16, relating to the elements of a contract, and also in refusing the defendant's additional requested instructions Nos. 4 and 5. We think that the instructions given were proper, and that there was no error committed in refusing the instructions proposed by the defendant.

The defendant next contends that the trial court erred in refusing to give his proposed instruction No. 6:

The law of the State of Washington makes it unethical for an attorney to represent a party with adverse interest to his client or to represent his own interests against those of his client and for the attorney to do so is a breach of the fiduciary duty owed by the attorney to his client, and the attorney is not entitled to any compensation from his client during the period he is representing others with adverse interests to his client or representing his own interests rather than his clients.

It is argued that there was evidence to establish that the plaintiff, in taking an assignment of a business

claim from an associate of the defendant in the defendant's auto repair business, had acquired an adverse or conflicting interest in violation of Canon of Professional Ethics 6, RCW vol. 0. The trial court refused the offered instruction on the ground that the evidence in the case established the defendant's knowledge of and consent to the transaction. Our review of the record persuades us that the trial court did not err in so ruling.

The defendant finally contends that the trial court abused its discretion by improperly limiting the scope of the cross-examination of the plaintiff by the defendant's counsel. We find no merit in this contention.

■ The plaintiff, pursuant to ROA 16, cross appeals from the trial court's refusal to allow interest on the amounts found due under the contingent fee contracts from the date of completion of the contracts. The trial court based its ruling on the fact that the plaintiff's fees under the contracts were unliquidated until verdict and judgment. We find that the ruling is supported by the record, and hold that interest is chargeable against the defendant only from the time that the fees became liquidated. *Smith v. Saulsberry*, 157 Wash. 270, 288 Pac. 927 (1930).

The plaintiff makes seven assignments of error which we need not discuss, in view of our disposition of this case.

The judgment is affirmed.

FINLEY, C. J., WEAVER, HALE, NEILL, and McGOVERN, JJ., concur.

HAMILTON, J. (dissenting)—I agree with the majority that respondent performed extensive and valuable legal services for appellants, and that he is entitled to compensation for such services. Unfortunately, however, I cannot agree with the majority view that the instructional error—which the majority concede—was nonprejudicial to appellants.

At the outset, it is necessary to bear in mind that respondent pursued his cause of action upon two distinct and alternative theories—(1) that he was entitled to stated

sums or percentages under the terms of two contingent fee contracts, and/or (2) that he was entitled to the reasonable value of his services. The amount or amounts which respondent would be entitled to recover could easily vary substantially depending upon the theory adopted by the jury.

The jury accepted the first theory, found the existence of the asserted contingent fee contracts, and awarded compensation accordingly. It reached this result, however, under instructions which misplaced the burden of proof with respect to factors which, under the circumstances of this case, the law and public policy require be established by respondent if he would sustain the asserted fee contracts. Furthermore, the jury was not advised in any fashion by the instructions it received as to the fiduciary nature of an attorney-client relationship and the bearing such a characteristic of the relationship between the parties had upon respondent's first theory.

As the majority correctly point out, the pertinent rule as to the burden of proof in an action to establish and enforce a fee contract entered into after the attorney-client relationship has come into existence is set forth in *Albert v. Munter,* 136 Wash. 164, 239 Pac. 210 (1925). This court there stated, at 175:

Nevertheless it is true that, even in a jurisdiction where attorneys and parties are authorized by statute to make contracts for compensation of the attorneys during the existence of the relation of attorney and client, the contract may be considered void, or voidable, *until it is shown by the attorney that the contract with his client was fair and reasonable, free from undue influence, and made after a fair and full disclosure of the facts upon which it is predicated.* (Italics mine.)

That the rule enunciated in the *Albert* case, is one of almost universal recognition can be affirmed by a reference to the following authorities: *Rupp v. Cool,* 147 Colo. 18, 362 P.2d 396 (1961); *Bryant v. Hand,* 158 Colo. 56, 404 P.2d 521 (1965); *Lawrence v. Tschirgi,* 244 Iowa 386, 57 N.W.2d 46 (1953); *Coleman v. Sisson,* 71 Mont. 435, 230 Pac. 582

(1924), as reaffirmed in *Daniels v. Paddock*, 145 Mont. 207, 399 P.2d 740 (1965); *Morton v. Forsee*, 249 Mo. 409, 155 S.W. 765 (1913), as recognized in *Fein v. Schwartz*, 404 S.W.2d 210 (Mo. App. 1966); and *In re Schanzer's Estate*, 7 App. Div. 2d 275, 182 N.Y.S.2d 475, *aff'd* 8 N.Y.2d 972, 204 N.Y.S.2d 349, 169 N.E.2d 11 (1959, 1960). And for earlier cases and pertinent discussion see Annots., Ann. Cas. 1917A, 531 (1917) and 19 A.L.R. 847 (1922); 7 Am. Jur. 2d *Attorneys at Law* § 267 (1963); 7 C.J.S. *Attorney and Client* 204a (2) (1937); 2 E. Thornton, Attorneys at Law §§ 428-32 and 532 (1914); E. Weeks, Attorneys at Law § 346 (2d ed. 1892).

Without going into a detailed analysis of the foregoing authorities, a succinct summary of the applicable rule—for comparison with the rule of the *Albert* case, *supra*—can be found in *Rupp v. Cool, supra,* where the Supreme Court of Colorado states, at 21:

> Once the confidential relationship of attorney and client exists, the law governing contracts entered into between them is very different. The test applied to such contracts when the attorney seeks to enforce the same is well stated in 7 C.J.S., Attorney and Client, §204 (2):
>
> "Where after the relationship has been established, an attorney and client enter into an agreement in reference to the attorney's compensation, * * * the burden is on him to prove that the agreement was fairly and openly made, was supported by an adequate consideration, and that he gave the client full knowledge of the facts and of his legal rights, when he entered into the agreement, and that the services to be performed were reasonably worth the amount stated in the agreement; * * *."

Or, in *Fein v. Schwartz, supra,* where the Missouri court noted, at 223:

> Directing our attention to the contention of appellant that respondents failed to sustain the burden in the respects complained of, we agree with their understanding of the law that where a contract for compensation is executed by an attorney and his client *after the establishment of the fiduciary relation,* the burden is on the attorney to show that the transaction was fair, that the

compensation provided for did not exceed a fair and reasonable remuneration for the services rendered or to be rendered, that the contract was free from all fraud and undue influence and that it was entered into by the client freely and with a full understanding as to her rights.

In developing and enunciating the rules reflected in the foregoing quotations, the courts and authorities have, with considerable uniformity, pointed to such considerations as the highly confidential and fiduciary relation existing between attorney and client once the relationship has been established; the potential dominance extant by virtue of the superior legal training, knowledge and experience of the attorney as opposed to that of the ordinary client; the opportunity, if not the temptation, to overreach or obtain undue advantage which is inherent in a relationship involving such a strong degree of trust and confidence; the ethics, the dignity, and the integrity intrinsic in and essential to the legal profession and continued public reliance thereon; the obligation and responsibility of the attorney to fully, fairly, and to the best of his ability advise his client in all matters pertaining to the business, transaction, employment or fees involved; and the maintenance and perpetuation of standards which will prevent fee negotiations—particularly those arising during the attorney-client relationship—from entering into the arena or embracing the customs of the common market place.

In fact, some authorities have found the array of public policy considerations so formidable as to cast a presumption of fraud or undue influence upon all contracts for compensation negotiated between attorney and client during the course of the relationship, which, they hold can only be overcome by the production of clear and most satisfactory proof. *See* Annots., Ann. Cas. 1917A, 531 and 19 A.L.R. 487, *supra*. Other authorities have suggested that the burden resting upon the attorney of establishing the fidelities of the fee transaction should be extended to agreements for compensation negotiated before the actual employment has taken place, arguing that no sound reason

exists for any distinction between initial and later fee discussions. 2 E. Thornton, Attorneys at Law, § 432 (1914).

Against this background, then, and in keeping with the rule laid down in the *Albert* case, *supra*, it seems to me appellants were entitled as a matter of law to have the jury instructed that respondent had the burden of establishing by a preponderance of the evidence that the asserted contingent fee contracts were (1) fair and reasonable, (2) free from undue influence, (3) entered into after a fair and full disclosure of all pertinent matters, and (4) fully understood and comprehended by appellants.

Instead, the jury, by instructions Nos. 4 and 5, were instructed:

> For the plaintiff to recover on an express contract for legal services performed by the plaintiff on behalf of the defendant, the plaintiff has the burden of proving, by a fair preponderance of the evidence:
>
> 1. That the parties had a meeting of the minds resulting in a contract between them as to
>
> (a) the work to be done by the plaintiff, and
>
> (b) the compensation to be paid, and
>
> 2. That the agreement was fair and reasonable. (Instruction No. 4.)
>
> If you find that:
>
> 1. Due to the defendant's mental condition or the relationship of trust and confidence between the attorney and client, *the defendant was acting under duress, undue influence or coercion,* or
>
> 2. *That the plaintiff failed to fully and fairly apprise the defendant as to his legal and economic position,* respecting a particular contract for legal services, then such express contract cannot be enforced and you will not bring in a verdict based on such an agreement.
>
> The *defendant has the burden of proving the foregoing by a fair preponderance of the evidence.* The defendant likewise has the burden of proving payment by a fair preponderance of the evidence. (Italics mine.) (Instruction No. 5.)

Unmistakably, these instructions misplaced the burden of proof with respect to the presence or absence of the ele-

ments of undue influence and full disclosure. Furthermore, they were in the nature of formula instructions, which, when erroneous, have been condemned as prejudicial by this court. *Donner v. Donner,* 46 Wn.2d 130, 278 P.2d 780 (1955); *See v. Willett,* 61 Wn.2d 681, 379 P.2d 915 (1963).

Proper exceptions were taken by appellants to these instructions, and in lieu thereof appellants submitted a series of proposed instructions, the gist of which is found in proposed instruction No. 3, which reads:

> The relationship of attorney and client is one of the strongest fiduciary relationships known to law and has always been regarded as one of special trust and confidence. The law, therefore, requires that all dealings between the attorney and his client shall be characterized by the utmost fairness and good faith and it scrutinizes with great closeness all transactions between them. A contract for compensation of the attorney made during the existence of the relationship of attorney and client may be considered void or voidable and the attorney has the burden of proving that the contract with his client was fair and reasonable and that he used no undue influence and the compensation contract was made after the attorney made a fair and full disclosure of the facts upon which it is predicated, and that it was entered into by the client freely and with a full understanding as to his rights.

Aside from a slightly argumentative tinge, the instruction otherwise appears to be squarely in keeping with the rule of the *Albert* case, *supra.*

The trial court not only rejected all of appellants' proffered instructions, embracing as they did appellants' underlying theory of the case as it pertained to respondent's contract theory, but the trial court also failed to inform the jury by any instruction that the parties at the time of the asserted fee negotiations stood in any form of a confidential or fiduciary relation, or to define such a relationship to the jury, thereby leaving the jury free to place its own interpretation on the "relationship of trust and confidence" referred to in instruction No. 5.

Thus, it seems to me, by virtue of misdirection and nondirection, the jury inescapably entered upon its delibera-

tions with the conception that the parties virtually stood on an equal footing during the course of the pertinent fee negotiations, and the existence or nonexistence of the asserted contracts was to be measured by the same standards as be applicable to the ordinary garden variety contract. This, it seems to me, was prejudicial to appellants, for, whether appellants be wise or foolish, educated or uneducated, provident or improvident, they were entitled to have the jury properly instructed, particularly as related to their theory of the case. Certainly, it requires no citation of authority to support the proposition that a failure to properly submit a litigant's theory of the case to the jury constitutes prejudicial error.

The fact that the jury found against appellants upon the elements of undue influence and full disclosure does not necessarily mean, as the majority would have it, that the jury would have found in favor of respondent on these issues had it been correctly instructed as to respondent's burden of proof in respect thereto. At best we can only speculate as to the jury's findings had it been properly instructed. Hence, the most that can be fairly said, without substituting our deliberations for those of the jury, is that the jury more probably found that the appellants failed to carry the burden of proof which the instructions incorrectly placed upon them. This could likewise have been its reaction had respondent been impressed with the burden of proof. If this be correct, and the jury sustained the fee contracts upon an incorrect basis, then appellants were also prejudiced in that the jury could not and did not reach nor could it consider respondent's alternative theory of quantum meruit, which, had the jury done so, might well have produced a lesser verdict.

Under these circumstances, and as unfortunate and unhappy as it may be to remand this long and intensely contested litigation for retrial, it seems to me there can be no other result consistent with retaining and maintaining the high standards the law and public policy place upon the legal profession in fee negotiations.

I would conclude by stating that this dissent intends no imputation of unprofessional conduct on the part of respondent, nor does it arise out of sympathy for any other party. It rests solely upon the ground that instructional error was committed, which I cannot conscientiously view as harmless.

BRADFORD, J. Pro Tem., concurs with HAMILTON, J.

HILL, J. (concurring)—For the reasons epitomized in the third paragraph of the dissent, I concur therein.

December 31, 1968. Petition for rehearing denied.