No. 98-333

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 305N

IN RE ESTATE OF HARRY ALBERT BOLINGER, III,

Deceased.

APPEAL FROM: District Court of the Eighteenth Judicial District,

In and for the County of Gallatin,

The Honorable Mike Salvagni, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Charles F. Angel, Angel Law Firm; Bozeman, Montana

For Respondent:

John Frohnmayer, Attorney at Law; Bozeman, Montana

(for personal representative Deborah Reichman)

Submitted on Briefs: September 10, 1998

Decided: December 8, 1998

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

**¶1. Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be**

reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2. Harry Albert Bolinger, III (Bud), died intestate on March 25, 1995. Deborah Reichman was appointed personal representative by the District Court for the Eighteenth Judicial District in Gallatin County. In July 1995, a will was discovered and filed by Bud's father, Harry Albert Bolinger, Jr. (Hal). First Hal, then Marian Bolinger, Bud's stepmother, sought appointment as personal representative, pursuant to the terms of the will.

¶3. Through the original representative, Bud's children contested the validity of the will on the grounds that it was the product of undue influence. They also alleged that Hal defrauded Bud and they sought the placement of Bud's estate in a constructive trust.

¶4. Following a three-day trial, a jury found that Hal had exerted undue influence over his son's execution of the will. The jury also found that Bud intended to create a trust for his children in the will, and that Hal defrauded Bud by failing to create an effective trust. As a result, the District Court invalidated the will and ordered that the estate be distributed pursuant to the rules of intestate succession. Marian appeals. We affirm the judgment of the District Court.

¶5. The appellant raises ten issues on appeal; however, we find the following issues dispositive:

¶6. 1. Was there sufficient evidence to sustain the jury's finding that the will in controversy was executed as a result of fraud?

¶7. 2. Did the District Court err when it admitted Exhibit 1A into evidence?

FACTUAL BACKGROUND

¶8. Bud Bolinger was born in 1936. Bud's father, Hal, was an attorney who owned a ranch near Belgrade. In the early 1960s Bud left a nascent career as an entomologist and began ranching with his father. In 1968, they formed a partnership, to which Hal contributed the land and Bud contributed his labor.

¶9. Bud worked for the ranch for the rest of his life. His annual salary never exceeded $11,000. During his lifetime, Bud accumulated no property, vehicles, or assets other than his partnership interest in the ranch, 245 acres of real property deeded to him by his father in 1980, and 85 head of cattle transferred to him in 1993.

¶10. Bud married in 1967. He and his wife lived in a trailer 200 yards from his father's house. They had three children, Harry Bolinger, IV, Wyetta, and Travis. Bud and his wife divorced in 1975. The children moved to the Great Falls area with their mother, but maintained close ties to Bud through letters, phone calls, holidays, and summer vacations.

¶11. In 1984, while his children were still minors, Bud executed a will which devised his entire estate to his father or stepmother. The will specifically excluded Bud's children, but stated that the exclusion was made "for the reason that I feel confident that any property which either my father or my step-mother . . . receive from my estate will be used in the best interests of my said children as my said beneficiaries may determine in their exclusive discretion."

¶12. Hal Bolinger drafted Bud's will. He was not present, however, when it was executed. Bud appeared alone at his neighbors' house and asked them to witness the execution of the will.

¶13. Bud died in March 1995. A search was made among his personal effects, but no will was discovered. Intestacy proceedings were initiated and after discussions among his children, Deborah Reichman was appointed personal representative of Bud's estate. In July 1995, Hal or Marian discovered the 1984 will in one of Hal's ranch files. They submitted the will for probate, and petitioned that Hal be appointed personal representative pursuant to its terms. Hal subsequently withdrew for health reasons and Marian sought appointment in his stead, again pursuant to the terms of the will.

¶14. This Court has already determined that the will did not create an express trust for the benefit of Bud's children. *See In re Estate of Bolinger* (1997), 284 Mont. 114, 943 P.2d 981. We have also previously affirmed that the ranch assets, not including the real property, were held by Hal and Bud as partners. *See In re Estate of Bolinger*, 1998 MT 303.

¶15. Bud's children sought to have the will set aside as a product of undue influence and fraud. Following a three-day trial, a jury concluded that Hal exerted undue influence and that Hal defrauded Bud by failing to effectively create a testamentary trust for the benefit of Bud's children.

¶16. On the basis of the jury's findings, the District Court invalidated the will and ordered the estate distributed in accordance with the intestate succession statutes.

## ISSUE 1

¶17. Was there sufficient evidence to sustain the jury's finding that the will in controversy was executed as a result of fraud?

¶18. The court instructed the jury as follows:

Constructive fraud consists in:

(1) Any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under him by misleading another to his prejudice or to the prejudice of anyone claiming under him.

¶19. There is no argument on appeal that this instruction was incorrect.

¶20. The jury unanimously answered the following question in the affirmative: "(5) In writing the will the way he did, where no express trust is established, did Hal commit fraud on Bud?"

¶21. In *Eaton v. Morse* (1984), 212 Mont. 233, 242, 687 P.2d 1004, 1008, we held that breach of a fiduciary duty owed by an attorney to a client constitutes constructive fraud. In *Daniels v. Paddock* (1965), 145 Mont. 207, 399 P.2d 740, we cited the following principle with approval, as originally stated in *Moore v. Rochester-Weaving Mining Co.* (Nev. 1918), 174 P. 1017, 1020:

"No principle has been so rigidly adhered to by the courts of this country and England than that where an attorney deals with his client for the former's benefit, the transaction is not only regarded with suspicion and closely scrutinized, but it is presumptively invalid on

the ground of constructive fraud, and that this presumption can be overcome only by the clearest and most satisfactory evidence."

*Daniels*, 145 Mont. at 221, 399 P.2d at 747.

**¶22. The jury heard evidence that Hal prepared Bud's will. This established an attorney-client relationship. They heard evidence that Bud trusted Hal to create a trust for his children and that Hal intended that Bud's children receive nothing. It was further apparent to the jury that Hal, rather than Bud, benefited from the attorney-client relationship. We conclude that based on these facts alone, there was sufficient evidence for the jury to find that Bud's will was executed as a result of Hal's constructive fraud.**

**¶23. Marian contends there is no evidence that Bud intended to create a trust for the benefit of his children and, therefore, that there is no evidence that Hal misled Bud to his detriment. Marian's argument is belied by her testimony that both she and Hal believed a trust had been created. There would have been no reason for the will to include a trust that Bud had not intended.**

**¶24. We conclude that the jury's verdict in response to Jury Interrogatory No. 5 related to fraud was supported by substantial evidence.**

ISSUE 2

**¶25. Did the District Court err when it admitted Exhibit 1A into evidence?**

**¶26. Exhibit 1A, which was a letter written to Judge Robert Keller by Bud's aunt, Margaret, in 1977, was most probably offered to prove the nature of Hal's influence over Bud. However, since it does discuss their relationship, and since their relationship was a necessary element of constructive fraud, we will address whether it was properly admitted.**

**¶27. We review evidentiary rulings for abuse of discretion. The district court has broad discretion to determine whether or not evidence is relevant and admissible pursuant to the Montana Rules of Evidence. Absent a showing of an abuse of discretion, the trial court's determination will not be overturned. *See State v.***

*Passama* (1993), 261 Mont. 338, 341, 863 P.2d 378, 380 (citing *State v. Crist* (1992), 253 Mont. 442, 445, 833 P.2d 1052, 1054).

¶28. Rule 802, M.R.Evid. provides: "Hearsay is not admissible except as otherwise provided by statute, these rules, or other rules applicable in the courts of this state."

¶29. Pursuant to Rule 803(16), M.R.Evid., statements in a document in existence twenty years or more, the authenticity of which is established, are not excluded from evidence by the hearsay rule. This is the so-called "ancient documents" exception to the hearsay exclusion.

¶30. Marian contends that Exhibit 1A should have been excluded as hearsay. She argues that the ancient documents exception to the hearsay rule is inapplicable because Rule 803 applies only to hearsay where the declarant is available as a witness. However, as the rule clearly states, the availability of the declarant is immaterial to the exceptions listed therein.

¶31. "Ancient documents may be admitted in evidence as proof of the facts recited therein, provided the writers would have been competent to testify to such facts." *King v. Schultz* (1962), 141 Mont. 94, 99, 375 P.2d 108, 110.

¶32. The rationale for the ancient documents exception is that the age and the authentication of the document lend it trustworthiness sufficient to overcome the competing rationale for the exclusion of hearsay. Moreover, when the document predates the controversy in which it is used as evidence, its trustworthiness is enhanced. *See* Advisory Committee's Note, 56 F.R.D. 183, 315 (1972).

¶33. Here, Exhibit 1A is an excerpt from a letter, written to Judge Robert Keller by Bud's aunt, Margaret, who passed away prior to Bud's death. The letter was more than twenty years old and it predated the execution of Bud's will. The letter was properly authenticated at trial by Judge Keller. Therefore, the letter falls within the ancient documents exception to the hearsay rule.

¶34. The declarant must also be competent to testify to the facts contained in the writing. Marian correctly points out that she is unable to test the basis of Margaret's knowledge concerning the contents of the letter. However, as Bud's aunt and as a psychologist, Margaret was competent to testify about the nature of Bud's

relationship with Hal. Under the rationale of the ancient documents exception, we accept the statements contained within the writing, even though they cannot be tested, because we accept the age, authenticity of the document, and the competency of the declarant as sufficient guarantees of trustworthiness. For these reasons, we affirm the evidentiary ruling of the District Court.

¶35. The remaining issues raised by Marian do not relate to the issue of fraud. They relate to either the jury's advisory verdict regarding Bud's intent to create a trust, or the jury's finding of undue influence. Since neither finding was essential to the judgment of the District Court, we need not discuss these issues.

¶36. The jury's verdict finding fraud in this case is affirmed, and we affirm the judgment of the District Court setting aside Bud's will.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART

Justice James C. Nelson specially concurs.

¶37. I concur in our discussion and decision on Issue 1. As to Issue 2, I do not necessarily agree that simply because Margaret was Bud's aunt and a psychologist that she was therefore competent to testify about the nature of Bud's relationship

with Hal. In my view there is insufficient evidence that, aside from who she was, she otherwise had any particularly trustworthy information or knowledge about Hal's and Bud's relationship. The statements in her letter are virtually nothing more than an expression of her personal opinions which, quite obviously and for undisclosed reasons, were biased in favor of Bud and against Hal. These are just the sorts of statements that have no independent guarantees of trustworthiness and that should be subject to cross-examination. Accordingly, I conclude that the "ancient documents" exception, Rule 803(16), M.R.Evid., does not apply and that Exhibit 1A was improperly admitted hearsay.

¶38. Notwithstanding, I also conclude that this exhibit was simply cumulative of other evidence of Hal's and Bud's relationship and that, therefore, the improper admission of Exhibit 1A was harmless.

/S/ JAMES C. NELSON

Justice Karla M. Gray concurs in the foregoing special concurrence.

/S/ KARLA M. GRAY